Catherine **KOBER**, Plaintiff-Appellant,

v.

**WESTINGHOUSE ELECTRIC CORPORATION**, Defendant-Appellee.

No. 72-1133.

United States Court of Appeals, Third Circuit.

Argued Feb. 13, 1973.

Decided May 25, 1973.

Daniel M. Berger, Berger & Kapetan, Pittsburgh, Pa., for plaintiff-appellant.

John G. Wayman, Eric P. Reif, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant-appellee.

Ramon V. Gomez, E. E. O. C., Washington, D. C., for amicus curiae.

Before VAN DUSEN and ADAMS, Circuit Judges and BRODERICK, District Judge.

## OPINION OF THE COURT

BRODERICK, District Judge.

The principal issue before the Court on this appeal is whether the district court should have granted back pay and injunctive relief in an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. in which the plaintiff-appellant claimed that she was discriminated against in her employment because of her sex. The district judge, in an action tried without a jury, based his refusal to award back pay on Westinghouse's reliance on the provisions of the Pennsylvania Women's Labor Law 43 P.S. § 101 et seq.

The judgment of the district court that the plaintiff is not entitled to back pay and injunctive relief is affirmed by this Court. As hereinafter discussed, the law is now clear that the district court was correct in its determination that the award of back pay and injunctive relief is discretionary; and we have found that there was no abuse of discretion in this case. However, we do not agree with one of the reasons set forth by the district court judge as a basis for denying back pay to the plaintiff. The district court found that Westinghouse's violation of Title VII of the Civil Rights Act of 1964, section 706(g), was not "intentional" because Westinghouse's refusal to promote appellant was based upon a state statute which prohibited her from working the hours required by the job. A denial of back pay on the ground that such a violation is not intentional is contrary to the recent decisions which have been handed down since the district court made its determination in this matter.[1]

In support of their position that the district court improperly denied back pay and injunctive relief, plaintiff-appellant and the Equal Employment Opportunity Commission, as *amicus curiae,* (hereinafter EEOC), have four principal contentions: (1) the district court erred when it found that Westinghouse did not intentionally engage in an unlawful employment practice in violation of section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g) when Westinghouse failed to promote plaintiff-appellant in reliance on the hour limitations imposed by section 103(a) of the Pennsylvania Women's Labor Law, 43 P.S. § 103(a); (2) that an award of back pay is required by the decisions of the Fourth and Seventh Circuits in Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971), petition for cert. dismissed, 404 U.S. 1006, 1007, 92 S.Ct. 573, 30 L.Ed.2d 655, and Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); (3) that even if an award of back pay is discretionary, the district court abused its discretion in failing to award back pay, and, finally, (4) that injunctive relief should have been awarded by the lower court.

Plaintiff-appellant, Catherine Kober, was first employed by defendant, Westinghouse Electric Corporation, appellee herein, in 1944 and on January 1, 1957 she was promoted to the computer operations department of Westinghouse's Sharon, Pennsylvania, plant. In 1961 she was again promoted to the position of peripheral machine operator. The normal progression of employment for Miss Kober would have been to a job as a Class B computer console operator and then to a position as a Class A computer console operator. If an employee performs satisfactorily in the peripheral machine operator position, the promotion to a Class B computer console operator is virtually automatic in accordance with

1. Manning v. General Motors Corp., 466 F.2d 812, 815–816 (6th Cir. 1972) cert. den. 410 U.S. 946, 93 S.Ct. 1366, 35 L. Ed.2d 613; Schaeffer v. Yellow Cabs, Inc., 462 F.2d 1002, 1006 (9th Cir. 1972); Le Blanc v. Southern Bell, 460 F.2d 1228, 1229 (5th Cir. 1972); cert. den. 409 U.S. 990, 93 S.Ct. 320, 34 L. Ed.2d 257; Rosenfeld v. Southern Pacific Co., 444 F.2d 1219, 1227 (9th Cir. 1971).

seniority and the existence of a vacancy, and then if the work in Class B is satisfactory, the promotion to Class A also is virtually automatic in accordance with seniority and the existence of a vacancy. A usual period before promotion from a peripheral machine operator to a Class B computer console operator is one year and a similar period of time intervenes between the Class B and Class A promotion. Miss Kober had the most seniority since 1957, performed satisfactorily in the peripheral machine operator job and would have been appointed to the Class B computer console operator position by the end of 1962 and to the Class A job by the end of 1963. Westinghouse, however, did not promote her to the Class B computer console operator job and thereafter to Class A because under the scheduling procedures of the computer operations division she would have been required to work in excess of five continuous hours without a thirty minute meal or rest break and to work in excess of six days and forty-eight hours a week, and 10 hours a day in violation of the Pennsylvania Women's Labor Law, 43 P.S. §§ 103(a) and 107. Miss Kober had made frequent requests for promotion prior to the effective date of Title VII (July 2, 1965) but was refused promotion by Westinghouse because of the provisions of the aforementioned Pennsylvania statute. Following the effective date of Title VII, a Class B computer console position became vacant but she was not promoted to it, again based on Westinghouse's reliance on the Pennsylvania statute.

On December 2, 1965 the EEOC promulgated regulations concerning the relationship between Title VII and state statutes protecting women which were preceded by the following policy statement:

Probably the most difficult area considered in these guidelines is the relation of Title VII to state legislation designed originally to protect women workers. The Commission cannot assume that Congress intended to strike down such legislation. 30 Fed.Reg. 14927 (1965).

The regulations provided:

(c) The Commission does not believe that Congress intended to disturb such laws and regulations which are intended to, and have the effect of, protecting women against exploitation and hazard. Accordingly, the Commission will consider limitations or prohibitions imposed by such state laws or regulations as a basis for application of the bona fide occupational qualification exception. However, in cases where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination, the law will not be considered a justification for discrimination. So, for example, restrictions on lifting weights will not be deemed in conflict with Title VII except where the limit is set at an unreasonably low level which could not endanger women.

(1) An employer, accordingly, will not be considered to be engaged in an unlawful practice when he refuses to employ a woman in a job in which women are legally prohibited from being employed or which involve duties which women may not legally be permitted to perform because of hazards reasonably to be apprehended from such employment.

(2) On the other hand, an employer will be deemed to have engaged in an unfair employment practice if he refuses to employ or promote a woman in order to avoid providing a benefit for her required by law—such as minimum wage or premium overtime pay.

(3) Where state laws or regulations provide for administrative exceptions, the Commission will expect an employer asserting a bona fide occupational qualification pursuant to this paragraph to have attempted in good faith, to obtain an exception from the agency administering the state law or regulation. 29 C.F.R. § 1604.1(c)(1966).

The following statement of the EEOC of February 23, 1968 appropriately de-

scribes the subsequent course of EEOC policy:

> [O]n August 19, 1966, the Commission adopted a policy with respect to the processing of cases involving State protective legislation. The Commission stated, in substance, that it would not make determinations on the merits in cases which present a conflict between the Act and State protective legislation where administrative exceptions under State law were unavailable; that in such cases the Commission would advise the charging parties of their right to bring suit within 30 days under section 706(e) of the Act to secure a judicial determination as to the validity of the State law or regulation; and that the Commission reserved the right to appear as amicus curiae in such cases to present its views as to the proper construction of the Act.

> *Present Commission action.* The Commission rescinds the August 19, 1966, policy statement and reaffirms the Guidelines published in the *Federal Register* on December 2, 1965. The rescission of the August 19 policy statement means that in cases where the effect of State protective legislation appears to be discriminatory rather than protective, the Commission will proceed to decide whether that legislation is superseded by the Act. In such situations the Commission expects to solicit the views of the relevant State authorities in respect to the purpose and effect of the State legislation. 33 Fed.Reg. 3344 (1968).

On February 13, 1967 another vacancy occurred in a Class B computer console operator job and Miss Kober requested the position. She was initially told by Westinghouse that it would apply for an exception from the state with reference to overtime hours and working without a break. About one week later, however, she was advised that Westinghouse's industrial relations department would not write the necessary letter requesting an exception. Thereafter a male employee with less seniority than plaintiff was given the Class B computer console job and one year later he was elevated to a Class A job.

On March 27, 1967, following Westinghouse's refusal to promote her, she filed a charge of discrimination under the Act with the EEOC. A finding of reasonable cause was issued on February 15, 1968 on the ground that Westinghouse had not sought an administrative exception pursuant to Rule G–19 from the State Act. Subsequently, during the conciliation stage of the proceedings the conciliator suggested that Westinghouse apply to the Commonwealth of Pennsylvania for an administrative exception to the State Act pursuant to Rule G–19 of the Pennsylvania Industrial Board, which rule became effective on April 23, 1966. The Secretary of Labor and Industry in a letter dated April 17, 1968 authorized Westinghouse to permit Miss Kober to work, as long as she consented, but specifically provided that Westinghouse could not require her to work in violation of the provisions of the Act. On May 27, 1968 plaintiff wrote a letter to the Department of Labor and Industry stating that she was willing to work the same overtime as the men on the Code 12 job. In a letter of June 27, 1968 the Secretary of Labor and Industry advised Westinghouse that plaintiff had specified her willingness to work these extended hours in her letter of May 27, 1968 and concluded:

> We trust the foregoing explanation, together with Miss Kober's written compliance to the extended hours, and our authorization for the elimination of the 30-minute rest or meal period, has cleared the way for Miss Kober to assume the position of computer console operator.

On the same day, the Secretary of Labor and Industry wrote a letter to Westinghouse allowing it to schedule plaintiff "on an eight hour continuous shift basis without a thirty minute meal or rest period after five hours of work." On October 14, 1968 the EEOC notified her that conciliation had failed and of her

right to bring suit for relief under the Act within thirty days. Hence, this lawsuit was commenced by the plaintiff on November 13, 1968. While the suit was pending, in August 1969, the EEOC finally arrived at a position that the conflicting state laws and regulations "have ceased to be relevant to our technology or to the expanding role of the female worker . . ." "Accordingly, the Commission has concluded that such laws and regulations conflict with Title VII of the Civil Rights Act of 1964 and will not be considered a defense to an otherwise established unlawful employment practice. . . ." 29 C.F.R. § 1604.1(b)(1970). Thereafter, here in Pennsylvania, the state's Attorney General concluded that the conflicting provisions of the Pennsylvania Women's Labor Law had been repealed by implication by the adoption of the Amendment to the Pennsylvania Human Relations Act of July 9, 1969 (43 P.S. § 951 et seq.), which barred discrimination in employment on the basis of sex in language similar to that of Title VII.[2] Following this opinion, Westinghouse declared that it would henceforth regard the Pennsylvania Women's Labor Law as repealed. and subsequently on April 1, 1970 Miss Kober was promoted to the first available vacancy in a Class B computer console job.

The district court, although concluding that Title VII had in fact superseded the Pennsylvania Women's Labor Law, and although finding that Miss Kober had in fact suffered wage loss by her failure to be promoted, refused to award back pay or injunctive relief on the basis that defendant had not "intentionally" engaged in an unlawful employment practice under Section 706(g), 42 U.S.C. 2000e–5(g), because of the

barrier of the conflicting state law. However, the district court also concluded that the award of back pay was discretionary and concluded that back pay was inappropriate in the circumstances of this case. The Court, however, did grant a reasonable counsel fee to Miss Kober.

■ We do not agree with the trial court's position that Westinghouse did not intentionally engage in an unlawful employment practice in violation of Section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g) [3] when it failed to promote Miss Kober to the Class B computer console operator position because of her sex, based on its reliance on the conflicting provisions of the Pennsylvania Women's Labor Law, 43 P.S. § 103(a). In situations where employers did not rely on state statutes allegedly in conflict with Title VII, the Fourth, Fifth, Seventh, Ninth, and Tenth Circuits have held that the intentional unfair employment practices included in Section 706(g) are those practices which are engaged in deliberately · rather than accidentally. Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002, 1006 (9th Cir. 1972); Rosenfeld v. Southern Pacific Co., 444 F.2d 1219, 1227 (9th Cir. 1971); Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1201 (7th Cir. 1971) cert. den. 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); Robinson v. Lorillard Corporation, 444 F.2d 791, 796 (4th Cir. 1971); petition for cert. dismissed, 404 U.S. 1006–1007, 92 S.Ct. 573, 30 L.Ed.2d 655; Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245, 250 (10th Cir. 1970), cert. den. 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237; Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980, 996 (5th Cir. 1969), cert. den. 397 U.S. 919, 90 S.

---

2. Opinion of the Attorney General of the Commonwealth of Pennsylvania to the Pennsylvania Secretary of Labor and Industry, Nov. 14, 1969.

3. Section 706(g), 42 U.S.C. 2000e–5(g) provides, in pertinent part:
   (g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in an unlawful employment practice and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay.

Ct. 926, 25 L.Ed.2d 100 (1970). See Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

And the Fifth, Sixth and Ninth Circuits have adopted this line of reasoning and have concluded that in cases where an employer has relied on statutes allegedly in conflict with Title VII that there was an intentional violation of Section 706(g), Manning v. General Motors Corp., 466 F.2d 812, 815–816 (6th Cir. 1972), cert. den. 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613; Schaeffer v. Yellow Cabs, Inc., *supra,* 462 F.2d at 1006; LaBlanc v. Southern Bell, 460 F.2d 1228 (5th Cir. 1972), aff'g per curiam 333 F.Supp. 602 (E.D.La.1971); Rosenfeld v. Southern Pacific Co., *supra,* 444 F.2d at 1227; *contra;* Garneau v. Raytheon Co., 341 F.Supp. 336, 338 (D.Mass.1972); Ridinger v. General Motors Corp., 325 F.Supp. 1089, 1099 (S.D.Ohio 1971); rev'd in light of Manning, *supra,* 474 F.2d 949 (6th Cir. Oct. 13, 1972); Richards v. Griffith Rubber Mills, 300 F. Supp. 338, 341 (D.Ore.1969).

■■ We conclude that it is now the law that discrimination based on reliance on conflicting state statutes is an intentional unfair employment practice. Intentional unfair employment practices are those engaged in deliberately and not accidentally. No wilfullness on the part of the employer need be shown to establish a violation of Section 706(g).

### BACK PAY NOT MANDATORY

We now turn to the issue of whether the district court incorrectly denied Miss Kober back pay. Appellant and the EEOC argue that an award of back pay is required by the decisions of the Fourth and Seventh Circuits in Robinson v. Lorillard Corp., *supra,* and Bowe v. Colgate Palmolive Co., *supra.*

In Robinson v. Lorillard Corp., a class action pursuant to Title VII, the district court's award of back pay to the members of a class who had been the victims of an intentional unfair employment practice as a result of a racially discriminatory seniority system was challenged as an abuse of discretion because of the unsettled state of the law and because of the absence of a specific intent to discriminate. The Fourth Circuit rejected the claim that the trial judge abused his discretion by awarding back pay and said:

> back pay is not a penalty imposed as a sanction for moral turpitude; it is compensation for the tangible economic loss resulting from an unlawful employment practice. Under Title VII the plaintiff class is entitled to compensation for that loss . . . Id., 444 F.2d at 804.

Bowe v. Colgate-Palmolive Co. was also a Title VII class action suit challenging, *inter alia,* that a system of layoffs was discriminatory in that the layoffs were based on separate male and female seniority lists. The district court found, *inter alia,* that the seniority system was discriminatory and enjoined the employer from using it and awarded back pay only to those members of the class who had filed charges of discrimination with the EEOC. On appeal, the Seventh Circuit held that the district court erred in denying back pay to the members of the class who had not filed claims with the EEOC. The Seventh Circuit said:

> The clear purpose of Title VII is to bring an end to the proscribed discriminatory practices and to make whole, in a pecuniary fashion, those who have suffered by it. Id., 416 F.2d at 720.

> \* \* \* \* \* \*

> 42 U.S.C. § 2000e–5(g) requires that if the court finds an intentional unlawful employment practice, it may enjoin the practice "and order such affirmative action as may be appropriate." This grant of authority should be broadly read and applied so as to effectively terminate the practice and make its victims whole. Id., at 721.

The Fourth Circuit in Moody v. Albemarle Paper Co.,[4] decided since the instant case was argued, held that the award of back pay is required by Title VII to the members of a class who are victims of racial discrimination and who succeed in obtaining an injunction unless special circumstances render such an award unjust. The majority opinion reversed the district court and sent the case back to determine an appropriate award of back pay on the ground that there were no special circumstances in the case.

We must admit that these cases from the Fourth Circuit and Seventh Circuit severely limit the circumstances under which a trial judge may deny back pay. However, on this record[5] we are inclined to follow the more persuasive reasoning of the Sixth Circuit in Manning v. General Motors Corp., *supra*, 466 F.2d at 815–816; the Ninth Circuit in Schaeffer v. Yellow Cabs, Inc., *supra*, 462 F.2d at 1006–1008; the Fifth Circuit in LeBlanc v. Southern Bell, *supra*; and the dissenting opinion of Judge Boreman of the Fourth Circuit in Moody v. Albemarle, *supra*.

In LeBlanc v. Southern Bell, a Title VII action alleging sex discrimination, the district court was presented with facts almost identical to those in the instant case. There the employer refused to promote the female plaintiffs because of a Louisiana Statute forbidding employment of females for more than eight hours a day, and more than forty-eight hours or six days in any consecutive seven-day period. The district court found an intentional violation of Title VII but declined to issue injunctive relief or back pay because of the employer's good faith and because the employer's practices were compelled by a state law in conflict with Title VII. The Fifth Circuit affirmed *per curiam* by holding that the plaintiffs had failed to sustain their burden of showing that the district court had abused its discretion in determining to award back pay. Similarly, in Manning v. General Motors Corp., a Title VII class action suit for sex discrimination, the district court declined to issue either injunctive relief or back pay to female employees who were denied promotion based on the employer's good faith reliance on Ohio legislation limiting, among other things, the hours of female employment. The Sixth Circuit affirmed, finding "under all the circumstances of this case we cannot conclude

---

4. Moody v. Albemarle Paper Co., 474 F.2d 134 (4th Cir. 1973).

5. The district court found that "[t]here is no dispute that the employment of plaintiff in the position sought would have violated the terms of [the Pennsylvania Women's Labor Law]" (469 of 325 F. Supp.). Also the record contains this undisputed language from an August 23, 1968 letter of counsel for defendant to the EEOC Conciliator (33a–34a):

"In our meeting of Thursday, March 14, 1968, the requirements of the Computer Console Operator's position were explained to you. It was explained that the position, by its very nature, would require the operator to work well in excess of the hours specified in the statute. The manager of the department documented for you the reasons why the operator would be required to work overtime on a constant basis, and he related to you that past experience had shown that the operator could be required to work from as little as nine

(9) to as many as sixteen (16) hours per day, and from as little as forty-eight (48) to as many as eighty (80) per week.

"During our meeting, you did not dispute that the foregoing accurately represented the operational requirements of the job.

"In addition, it was pointed out to you that local management would have to possess the authority over the employee assigned to this position to make the performance of the above number of hours of work mandatory, a right it possesses with respect to male employees and with respect to female employees up to the statutory maximum. It was explained that on this operation in particular, local management could not be placed in a position of having the performance of overtime work operational with the employee, a situation that would arise if Miss Kober was placed on the position under the prohibition contained in Pennsylvania law."

that the District Judge abused his discretion in denying back pay to these plaintiffs." *Id.* 466 F.2d at 816. In Schaeffer v. Yellow Cabs, Inc., *supra,* also a Title VII suit based on sex discrimination, the district court refused to award injunctive relief or back pay to the female employees who had been denied promotion because of California's female protective legislation. The Ninth Circuit treated the denial of back pay as a matter for the discretion of the district court, saying:

A court may enjoin and award damages, but should only order affirmative action, such as back pay, when such relief is "appropriate." In a case of damages of this nature, a court must balance the various equities between the parties and decide upon a result which is consistent with the purpose of the Equal Employment Opportunities Act, and the fundamental concepts of fairness. *Id.*, 462 F.2d at 1006.

\* \* \* \* \* \*

Rather than drawing any hard and fast rule concerning the defense of good faith reliance on a state statute, we believe that in each case the merits of the plaintiff's claim and the public policy behind it must be balanced against the hardship on a good-faith employer. *Id.* at 1007.

The Ninth Circuit, however, reversed the district court holding that it had abused its discretion on the ground that an employer should not be entitled to rely on a state female protective statute which had been previously declared unconstitutional by an United States District Court in another district in the same state.

Section 706(g) of Title VII provides: If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court *may* enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as *may be ap-propriate,* which *may* include reinstatement or hiring of employees, *with or without back pay.* 42 U.S.C. § 2000e–5(g). (Emphasis added.)

The statute says that the court may order such affirmative action as may be appropriate, with or without back pay. It is our determination that this language clearly leaves the award or denial of back pay to the discretion of the district court, to be exercised in the light of all the circumstances of each case.

## NO ABUSE OF DISCRETION

The only issue, therefore, remaining is whether the lower court abused its discretion in denying injunctive relief and back pay. No basis has been presented on which this court could come to a determination that the trial judge abused his discretion in denying back pay in a situation where he finds that an employer followed the applicable provisions of state law prior to a judicial determination of its invalidity. This is exactly what the Fifth, Sixth, and Ninth Circuits determined in *Manning, supra,* 466 F.2d at 816, *Schaeffer, supra,* 462 F.2d at 1007, f. n. 42, *Le Blanc, supra,* 460 F.2d at 1229, and *Rosenfeld, supra,* 444 F.2d at 1227. In the Schaeffer case, the Ninth Circuit held it was an abuse of discretion for the district court to deny back pay in view of the fact that there was a prior judicial determination of the invalidity of the California statutes in that case. We find no abuse of discretion here, as state statutes, like federal ones, are entitled to a presumption of constitutionality until their invalidity is judicially determined. Davies Warehouse Co. v. Bowles, 321 U. S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944); *Manning, supra,* 466 F.2d at 816. Westinghouse did not have the benefit of any judicial or even quasi-judicial determination of the validity of the Pennsylvania statutes until the opinion of the Attorney General on November 14, 1969 and the lower court opinion in this case on March 29, 1971. Furthermore, Miss Kober was promoted to

the first available vacancy in April of 1970, after the EEOC finally made a determinative ruling on the validity of conflicting state statutes on August 19, 1969 and after the Attorney General of the Commonwealth of Pennsylvania concluded on November 14, 1969 that the female protective provisions were implicitly repealed by the adoption of the amendment to the Pennsylvania Human Relations Act of July 9, 1969, 43 P.S. § 951 et seq. We certainly cannot find any abuse of discretion by the lower court. As pointed out by the District Court Judge, the employer was caught in a dilemma between the conflicting provisions of state and federal law and acted to end the discrimination against Miss Kober when the first vacancy occurred after the Attorney General ruled that the conflicting provisions of the state law had been implicitly repealed. Westinghouse promoted Miss Kober almost twelve months prior to the judicial determination of the lower court in the instant case that the state statutes were invalid.

██ Appellant specifically contends that the lower court abused its discretion in refusing to award back pay from April 17, 1968 when the Commonwealth Department of Labor and Industry granted an exception which they contend permitted Westinghouse to promote Miss Kober without running afoul of the Pennsylvania Women's Labor Law. Westinghouse applied for an exception from the provisions of 43 P.S. § 103(a) asking it be permitted to require Miss Kober to work approximately nine to sixteen hours a day, forty-eight to eighty hours a week, and seven days a week, all of which the statute prohibited in the following language:

(a) Except as hereinafter provided, no female eighteen (18) years of age or older shall be employed or permitted to work in, or in connection with, any establishment for more than six (6) days in any one week or more than forty-eight (48) hours in any one week, or more than ten (10) hours in any one day.

Where the strict application of the schedule of hours, provided for by this section, imposes an unnecessary hardship and violates the intent and purpose of this act, the Secretary of Labor and Industry, with the approval of the Industrial Board, may make, alter, amend, and repeal, general rules and regulations prescribing variations from said schedule of hours. . . . 43 P.S. § 103(a).

The Secretary of Labor and Industry in a letter dated April 17, 1968 authorized Westinghouse to permit Miss Kober to work hours in excess of those permitted by the State statute, as long as she consented, but specifically provided in paragraph 4 of the letter as follows:

Any action to require or coerce women to work in excess of ten hours a day, forty-eight hours a week, or six days a week will be cause for immediate revocation of this authorization.

This language says that Westinghouse could not require Miss Kober to work hours which would be in violation of the Act. Miss Kober contends, however, that a subsequent letter from the Secretary of Labor and Industry, dated June 27, 1968, makes it clear that an exception had been granted which permitted Westinghouse to promote her to the position in question. The Secretary's letter contains this language:

The language used in paragraph 4 of the Granting Letter reiterates Section 3 of the Women's Labor Law. However, before such authorization is granted, we request the signatures of the women involved, signifying their compliance with extended hours. Miss Catherine Kober has so specified her willingness to work these extended hours in her letter of May 27, 1968 (copy enclosed).

\*      \*      \*      \*      \*      \*

We trust the foregoing explanation, together with Miss Kober's written compliance to the extended hours, and our authorization for the elimination of the 30 minute rest or meal period, has cleared the way for Miss Kober to

assume the position of Computer Console Operator.

While this letter sounds broad in its scope it does not change the language set forth in the Secretary's letter of April 17, 1968 that Westinghouse could not require Miss Kober to work in excess of the hour limits in the Act. In reaching this conclusion, we call attention to Regulation G–19 of the Industrial Board pursuant to which the Secretary issued the exception:

> In order to assure female employees in Pennsylvania equal employment opportunities with male employees, in those situations where because of production, service or other requirements and because of a limited supply of trained or skilled employees, an employer establishes for an indefinite period a work schedule in excess of 10 hrs. a day or 48 hrs. a week, or where the nature of the operations creates a periodic need for schedules in excess of 10 hrs. a day, 48 hrs. a week or 6 days a week, female employees over 18 years of age may be permitted, but shall not be required to work in excess of the statutory limitations on hours of work specified in the Women's Labor Law, provided that a written request from the employer is submitted to the Secretary of Labor and Industry who may after investigation authorize an exception for female employees from the hours limitations of the Women's Labor Law if he determined that such exception is needed to provide equal employment opportunities.

In our opinion, G–19 does not authorize the Secretary to grant an exception which would have insulated Westinghouse from the provisions of the Act in this case. The limited exception which Miss Kober obtained would have been unfair to Westinghouse in that she could not have been required to work the longer hours specified in the job description. The lower court found that the exception was not "clear cut" and further found that it was doubtful whether the Secretary of Labor and Industry had the power to grant a clear-cut exception. And we agree with this analysis of the so-called "exception" by the lower court. Although on this record some members of the panel might have granted back pay for the period after August 1969, when the EEOC ruled that the Pennsylvania Women's Labor Law was ineffective since in conflict with Title VII of the 1964 Civil Rights Act, we find no basis on which to hold that the lower court abused its discretion in failing to award back pay based on the alleged exception from April 17, 1968 until April 1, 1970, or for any other period prior to April 1, 1970.

## INJUNCTIVE RELIEF

Plaintiff-appellant's argument that the lower court incorrectly denied injunctive relief is equally without merit, as injunctive relief under the statute is likewise discretionary and the Court finds no abuse of discretion here. We agree with the conclusion of the Sixth Circuit in *Manning, supra* at 815, that there is no abuse of discretion in refusing to grant "an injunction which could have done no more than restrain the defendant . . . from doing that which it had not been doing for more than a year before the date the District Court Order was entered."

The judgment of the district court will be affirmed.