Sarah M. BRYAN et al.

v.

PITTSBURGH PLATE GLASS COM-
PANY, (PPG INDUSTRIES, INC.)
et al.

Objecting Plaintiffs, Marie Abate
et al., Appellants.

No. 73–1697.

United States Court of Appeals,
Third Circuit.

Argued Jan. 15, 1974.

Decided April 4, 1974.

Joseph M. Maurizi, Joseph W. Conway, Balzarini, Walsh, Conway & Maurizi, Pittsburgh, Pa., for plaintiffs-appellees.

Scott F. Zimmerman, Walter P. DeForest, John M. Mazur, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for PPG Industries, Inc.; Nicholas R. Criss, Jr., Pittsburgh, Pa., of counsel.

Clayman & Jaffy, Stewart R. Jaffy, Columbus, Ohio, for appellees, United Glass & Ceramic Workers of North America, AFL–CIO, etc., et al.

Jane M. Picker, Rita Page Reuss, Charles E. Guerrier, Lisabeth A. Moody, Cleveland, Ohio, Martin Lubow, Pittsburgh, Pa., for objecting plaintiffs-appellants; Howard Moore, Jr., Elizabeth R. Rindskopf, John R. Myer, Moore, Alexander & Rindskopf, Atlanta, Ga., of counsel.

William A. Carey, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel (Acting), Beatrice Rosenberg, Charles L. Reischel, Josephine A. Trevathan, Washington, D. C., Equal Employment Opportunity Commission, amicus curiae.

Before SEITZ, Chief Judge, and KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Appeal is taken here, pursuant to 28 U.S.C. § 1291 (1970), from an order of the district court for the Western District of Pennsylvania approving settlement of a class suit and dismissing the complaint with prejudice. The suit was filed on behalf of women presently or formerly employed at the Pittsburgh Plate Glass Company's Creighton plant. Plaintiffs allege that defendants Pittsburgh Plate Glass Company ("PPG") and the United Glass and Ceramic Workers ("the Union") engaged in sex discrimination violating Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. (1970).

The factual setting for this suit is not complex. Both before and after the effective date of the Civil Rights Act of 1964, PPG classified jobs at its Creighton plant as available to men only or to women only; no job was open to both men and women. Because men and women were not eligible for the same

jobs, separate seniority lists were kept. In the 1940's and 1950's, PPG laid off a great number of its Creighton employees. These employees, however, continued to accrue seniority while on lay-off since the bargaining agreement between PPG and the Union contained no termination provision.

When PPG's Creighton operation experienced a brief upsurge in business, in 1966 and 1967, men were recalled from lay-off and new employees were hired to fill male-only positions. No women were recalled, although had the seniority lists been merged, many women would have been senior to most of the recalled male employees. Complaints filed with the Equal Employment Opportunity Commission (EEOC) resulted in a conciliation agreement pursuant to which PPG merged seniority lists and opened certain jobs to both men and women. Other jobs remained open to only one sex.

In 1969, PPG and the Union negotiated an agreement covering Creighton employees by which employment rights of employees laid off for more than five years were terminated. This agreement immediately terminated the rights of 452 women, but no men. Sex discrimination charges again were filed with EEOC. EEOC made no final determination, but issued a "right-to-sue" letter to the complainants. Three women who had filed charges with the EEOC brought suit against PPG and the Union.

The district court found maintenance of a class action proper under Rule 23(b)(2) and (b)(3), and the class was defined as the 452 women initially terminated by the cut-off provision negotiated by defendants. Notice was given to the class, and a number of class members opted out of this litigation. After plaintiffs had completed presentation of their case and defendants had presented a substantial part of theirs, agreement on a settlement was reached. Class members were notified of the proposed settlement's terms and were given the oportunity to voice, and brief, objections. Subsequently, the district court approved the settlement, and 82 objecting plaintiffs appealed.

## I.

The district court has considerable discretion in determining whether a settlement is fair and reasonble, and its determination will be reversed only for abuse of discretion. Appellants, objecting plaintiffs, contend that the district judge abused his discretion in approving the settlement here. The first argument advanced to support this contention is that the plaintiffs' case was relatively strong as compared to defendants' and, therefore, that it was clearly not reasonable to grant plaintiffs a very small percentage of claimed back pay.

Consideration of the merits of the case is one step in determining the likely rewards the class would secure, if any, from prosecuting the litigation to a conclusion. United Founders Life Insurance Co. v. Consumers National Life Insurance Co., 447 F.2d 647, 655–656; (7th Cir. 1972); cf. Protective Committee v. Anderson, 390 U.S. 414, 424–425, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). The court, of course, need only evaluate the probable outcome of the litigation and is not required to weigh and decide each contention; further, the probable result at trial must be balanced against the probable costs, in both time and money, of continued litigation. *Id.* With these caveats in mind, we turn to a consideration of the plaintiffs' and defendants' cases.

Plaintiffs would seem to have made out a prima facie case of violation of Title VII's prohibition on sex discrimination. See 42 U.S.C. § 2000e–2(a) & (c) (1970); cf. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). They have shown a past discriminatory policy and an action having immediate discriminatory impact on employment rights. Because plaintiffs probably would be found to have established a

prima facie case of sex discrimination, defendants would bear the burden of justifying their discriminatory conduct. Muniz v. Beto, 434 F.2d 697, 700 (5th Cir. 1970).

Defendants assert that negotiation of the seniority cut-off provision was not discriminatory. They point out that the provision, although initially terminating rights only of women employees, thereafter terminated the employment rights of numerous male employees. Indeed, continued adherence to this provision is likely to terminate the rights of more men than women. Defendants insist that the termination provision was instituted to promote PPG's "business purpose" of securing a work force of balanced age. Coupled with a questionable discriminatory effect, this business purpose might well lead the district court to conclude that the negotiation of the seniority cut-off did not constitute discrimination on the basis of sex and, hence, was not an unlawful employment practice.[1] Cf. Robinson v. Lorillard Corp., 444 F.2d 791, 796–797 (4th Cir. 1971), cert. denied, 404 U.S. 1006, 92 S. Ct. 573, 30 L.Ed.2d 655 (1972).

The appellants, however, contend that the defendants' action becomes discriminatory when viewed in light of PPG's established system of job-classification by sex. Assuming that the legal theory underlying this contention is correct, we note that PPG claims that its job classifications were proper, and to support its claim, PPG has made allegations that appear to satisfy some of the disparate tests for ascertaining a bona fide occupational qualification.[2] See Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228, 235 (5th Cir. 1969); Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev., 1109, 1177–81 (1971). As an additional defense, the defendants assert that plaintiffs' suit is barred by failure to file charges with the EEOC within ninety days of the alleged unlawful practice, here negotiation and adoption of the seniority cut-off provision.[3] Timely filing with the EEOC has been held a jurisdictional prerequisite to maintenance of a Title VII suit, e. g., Mickel v. South Carolina State Employment Service, 377 F.2d 239, 242 (4th Cir. 1967), and plaintiffs appear not to have met that prerequisite.

▇▇▇▇ Two final points concerning the probable outcome of trial here are made by defendants. First, while appellants complain that plaintiffs are receiving a small percent of their back pay claim, plaintiffs have failed to indicate how they would substantiate their claim. Second, defendants correctly note that award of back pay is discretionary, and it is not clear that failure to award such relief here, were plaintiffs successful, would constitute an abuse of discretion. See Kober v. Westinghouse Electric Corp., 480 F.2d 240, 247–250 (3d Cir. 1973). In light of their defenses, we believe there is a strong likelihood that PPG and the Union would not have been held liable to plaintiffs for back pay. We, therefore, reject appellants' contention that, given the likely trial result, the district court abused its discretion in approving the settlement for a low proportion of plaintiffs' asserted loss.

1. Defendants also contend that, even if discriminatory, the termination provision is not unlawful because it was required by PPG as a "business necessity." We do not find consideration of this defense necessary.

2. PPG claims that it can prove that all or substantially all women would be incapable of the repetitive lifting of heavy loads of glass (which, PPG asserts, is a fragile and dangerous matter) required for formerly male-only jobs and that no practicable test exists to isolate individual women, if any, who may be capable of performing such jobs. We note, however, that in 1973 PPG abandoned all job classification by sex.

3. The time limit for filing charges with the EEOC has been expanded, since the commencement of this suit, from ninety to one-hundred-eighty days from occurrence of the alleged unlawful practice. See 42 U.S.C. § 2000e–5(e) (Supp. II 1972). We assume that this change does not alter the prerequisites for plaintiffs' suit.

## II.

■ Appellants contend, however, that the district court abused its discretion in approving as fair and reasonable the particular settlement proposed here when more than twenty percent of the class plaintiffs objected. While the proportion of the class opposed to a settlement is one factor to be considered in assessing its fairness, see C. Wright & A. Miller, Federal Practice and Procedure Civil § 1797 and cases cited n. 42 (1972), a settlement is not unfair or unreasonable simply because a large number of class members oppose it. The drafters of Rule 23 chose as a means of protecting the class the requirement that the district court approve the settlement. They did not require rejection of a settlement on objection of a given part of the class.

■ Rather than asserting that the number of objectors alone makes approval of the settlement improper, appellants argue that the number of objectors coupled with the nature of the right class members seek to vindicate make approval an abuse of discretion. The right to be free from discrimination is a personal right. See Robinson v. Lorillard Corp., *supra*, 444 F.2d at 799. Appellants argue that litigants should not be forced to abandon personal, as opposed to joint, rights without a judicial decision on the merits. The present Rule 23, however, makes no distinction for settlement purposes between class suits formerly called "true" class actions, where the class shares a joint right or liability, and class suits formerly denominated "hybrid" or "spurious," where rights or liabilities are several. Fed.R. Civ.P. 23(e), 23.1, 23.2; see J. Moore, 3B Moore's Federal Practice ¶ 23.-80[1] & [2] (2d ed. 1974). Thus, if it is improper to approve a settlement compelling appellants to abandon their claims against defendants, this impropriety must spring from the nature not of personal rights in general but of the specific rights asserted by the class here.

■ Appellants, as well as the EEOC speaking as amicus curiae, note that actions prosecuted by the Attorney General under Title VII cannot bind the discriminatee as res judicata or collateral estoppel. Williamson v. Bethlehem Steel Corp., 468 F.2d 1201, 1203–1204 (2d Cir. 1972). Since they argue, class representatives in a Title VII action function as "private attorneys general," such representatives should not be more able to bind unconsenting plaintiffs than the Attorney General. This analogy fails on two grounds. First, the class representatives do not bind dissenting class members; the district court, not the class representatives, must determine that the settlement is fair and reasonable. Second, class suits serve different ends than do public suits. The Attorney General's prosecution of a suit is governed by desire to achieve broad public goals and the need to harmonize public policies that may be in conflict; practical considerations such as where limited public resources can be concentrated most effectively, may dictate conduct of a suit inimical to the immediate interests of the discriminatee, who presumably seeks full satisfaction of his individual claim regardless of the effect on other cases.

Unlike suit by the Attorney General or even by a "private attorney general," who sues to protect public rights, the class action seeks to vindicate the rights of specific individuals, the class members; and unlike the public action, for a class action to be maintained the class representatives must be members of the class, have claims typical of the class and adequately represent the interests of absent class members. Fed.R.Civ.P. 23(a). Further, this action having been classed as a 23(b)(3), as well as (b)(2), class suit, the class members were given the opportunity to opt out of the litigation. It does not seem anomalous to allow a court-approved class settlement, but not a suit by the Attorney General, to compromise a discriminatee's Title VII claim.

**804**

### III.

 Although the district court did not abuse its discretion in finding the settlement fair and reasonable, appellants contend that the judgment of the district court must, nonetheless, be reversed. Appellants argue that the district court erred in defining the class broadly for all purposes when the class was clearly divisible into two sub-classes seeking different relief. The more senior class members are presumed by appellants to be interested in securing only back pay, while appellants desire reinstatement as well.

Where some ascertainble characteristic shared by only some members of a class causes them to seek relief not desired by the remaining members, it may be improper to treat the class as unitary. A pertinent illustration is offered by the Seventh Circuit's decision in Air Line Stewards & Stewardesses Association v. American Airlines, Inc., 490 F.2d 636 (7th Cir. 1973), although the court there focused on whether a proper class representative had been selected. The suit in *Air Line Stewards*, which challenged American Airlines' policy of discharging stewardesses who became pregnant, was originally filed on behalf of presently employed stewardesses who did or might desire to become pregnant and on behalf of stewardesses whose employment was terminated due to pregnancy. Obviously, those still employed by American could have an interest only in revocation of the airline's discharge-for-pregnancy policy, while former employees could assert claims for back pay and reinstatement as well.

 No such distinction appears here. All class members are former PPG employees terminated at the same time for the same reason by the same action. No difference among the plaintiffs appeared until some objected to the settlement; and we cannot assume that objection to the settlement sprang from differences generic to one identifiable group of plaintiffs. We, therefore, reject appellants' contention that the district court erred in refusing to divide the class into sub-classes.

 Finally, appellants challenge the sufficiency of the district court's statement of its reasons for approving the settlement and dismissing the suit. It is essential in cases such as this that the district court set forth the reasoning supporting its conclusion in sufficient detail to make meaningful review possible; use of "mere boilerplate" language will not suffice. Protective Committee v. Anderson, *supra*, 390 U.S. at 434, 88 S.Ct. 1157. Here the district court's opinion meets that requirement; it catalogues the parties' contentions, indicates the court's view of their strengths, and notes additionally the substantial delays likely in ascertaining appropriate back pay, should plaintiffs win such relief. To require a fuller statement of the court's views would turn a decision on approval of a proposed settlement into a determination on the merits in all but name.

The judgment of the district court will be affirmed.