**Dolores WERNET and Helen Golden, Plaintiffs-Appellants,**

v.

**AMALGAMATED MEAT CUTTERS AND BUTCHERMEN, LOCAL 17, AFL–CIO, Defendant-Appellee.**

**No. 72–2113.**

United States Court of Appeals, Sixth Circuit.

Argued June 4, 1973.

Decided Aug. 24, 1973.

Lawrence H. Curtis, Amerman, Burt & Jones Co., Canton, Ohio, on brief, for plaintiffs-appellants.

Jerry P. Hontas, Canton, Ohio, on brief, for defendant-appellee.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Appellants Wernet and Golden appeal from the dismissal after trial of their complaint against their union. They had filed complaints under the Civil Rights Act, 42 U.S.C. § 2000e (1970), against Pioneer Food Company, their employer, and against the Amalgamated Meat Cutters Union.

On trial of this case plaintiffs settled their differences with Pioneer Food Company and dismissed the case as to the employer. The case continued against the union, with the evidence showing that Pioneer Food during the years 1967, 1968 and 1969 maintained two seniority lists, one for men and one for women, in order to comply with the female protective statutes of the State of Ohio then in effect, O.R.C. §§ 4107.-43, 4107.46 (1965). Both employees

filed grievances with the union in 1968, and the second of these grievances filed by plaintiff Golden was ultimately arbitrated under the union-management contract, with the issue being resolved in favor of the company. The arbitrator relied upon the Ohio statute previously referred to.

The District Judge expressed the opinion that "the defendant union failed to adequately represent the plaintiffs, and that the allegation of the complaint that the defendant union failed to employ proper grievance procedures on behalf of the plaintiffs is well taken."

However, the District Judge also specifically found that "there was a lack of bad faith and there was an absence of an intentional wrongful act on the part of the defendant union," citing Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and Ridinger v. General Motors Corp., 325 F.Supp. 1089 (S.D.Ohio 1971).[1]

This court has recently, of course, had occasion to deal with the defense of employers based upon good faith adherence to state female protective laws not yet found to have been violative of the federal Constitution. *See* United Steelworkers v. United States Steel Corp., 479 F.2d 1255 (6th Cir. 1973); Manning v. International Union, 466 F.2d 812 (6th Cir. 1972). In *Manning* this Court said:

> The defendant, General Motors, did not have the benefit of any judicial determination of the validity of the Ohio female protective laws until 1971, and the enforcing agency had not handed down any definitive administrative interpretation which would assist in resolving the conflict between any such state statutes and the provisions of Title VII until August 19, 1969. Under all the circumstances of this case we cannot conclude that the District Judge abused his discretion in denying back pay to these plaintiffs. *Id.* at 816.

■ In this case we reach this same result in relation to appellee union and for the same reason affirm the District Judge.

Here the only allegations which concern the union are the following:

> (5) Defendant Union willfully engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, by discriminating against them because of their sex by failing to represent them in grievance procedures.
>
> \* \* \* \* \* \*
>
> (8) Defendant Union, upon being duly informed of plaintiffs' grievances as aforementioned, failed and has continued to fail to employ proper grievance procedures on behalf of plaintiffs to remedy said discrimination, and this failure was and is discrimination on behalf of its male members.

The discrimination alleged against the union is entirely derivative in this case. It arises out of the company's alleged discriminatory maintenance of separate seniority lists for men and women.

We read the findings of the District Judge (arguably somewhat contradictory) as indicating that the union employed something less than all-out efforts on behalf of these two female members but that its lack of vigor was mitigated by reliance in good faith upon the female protection laws of Ohio which mandated the employer's separate seniority lists and which at that time had not been declared unconstitutional.

If good faith reliance upon the state female protection statute (until found unconstitutional) is a defense which a District Judge may consider in denying money damages as to the employer who created the separate seniority lists, it must likewise serve as a defense for the union from such damages for waging something less than an all-out battle on behalf of its female members in the face of an apparently valid state law.

---

1. Appellants in this case failed to order a transcript or present any appendix. In the absence of an appellate record, every reasonable assumption should be indulged in favor of the court's decree. *See* Fraser v. Doing, 130 F.2d 617 (D.C.Cir. 1942).

We agree with the dissent that, as to allegations of discrimination by a union directly affecting employment (i. e., in hiring halls or apprentice programs, etc.), plaintiffs are no more required to prove "bad faith" than they are in relation to similar complaints against employers. Under *Manning, supra,* however, good faith reliance upon a presumptively valid state law may represent an exception to the general rule.

 We note that appellants' brief appears to argue their case as if it were a breach of contract action under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1970). No reference to § 301 was made in plaintiffs' complaint, however. Further, if this action be viewed as a § 301 complaint, it is governed by the standards of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). The standard of these two cases requires the plaintiff to prove "arbitrary or bad-faith conduct on the part of the Union." Vaca v. Sipes, *supra* at 193 of 386 U.S., at 918 of 87 S.Ct.; Motor Coach Employees v. Lockridge, *supra* at 299 of 403 U.S., 91 S.Ct. at 1913. The District Court Judge herein rejected such a finding.

The judgment of the District Court is affirmed.

---

McCREE, Circuit Judge (dissenting).

I respectfully dissent. The majority opinion affirms the denial of relief because the district court found that appellants did not prove bad faith on the part of the union. Because a defendant's bad faith is not a necessary element of a claim under the Civil Rights Act, and because I regard the district court's findings as inconsistent and insufficient, I dissent.

Appellants, who are women, asserted in their complaint that the union failed to employ proper grievance procedures on their behalf to redress their layoffs by their employer when men with less seniority were hired to perform duties identical or similar to theirs. The complaint charged that the union discriminated against them "because of their sex by failing to represent them in grievance procedures." Injunctive and monetary relief, in the form of backpay, were sought.

The district court, at the conclusion of the trial at which the defendant union rested without presenting any evidence, resolved in plaintiffs' favor what he concluded to be "the sole issue" for him to determine. Specifically, the court found "that the defendant Union failed to adequately represent the plaintiffs, and that the allegation of the complaint that the defendant Union failed to employ proper grievance procedures on behalf of the plaintiffs is well taken." Nevertheless, although he gave them costs, the district court refused to award damages to plaintiffs for three reasons: the union was entitled to rely on the state statutes mandating discriminatory treatment of females; the union was under no duty to challenge those statutes; and there was no showing that the union acted in bad faith.

I believe that none of these reasons provides an adequate ground to justify denying a remedy. The first is insufficient because the union, unlike the employer in this case and in Manning v. International Union, 466 F.2d 812 (6th Cir. 1972), was not the party regulated by the female protective statutes, and thus was not whip-sawed between the requirements of state and federal laws. The second reason is contradicted by the court's own finding that the union did breach a duty owed to plaintiffs to represent them adequately, and is irrelevant in any case because plaintiffs did not request the union to challenge the state statutes. The third reason—on which the majority in this case places its reliance—is a misapprehension of the test to be applied in resolving damage claims under Title VII.

The relevant statute, 42 U.S.C. § 2000e—5(g), provides in pertinent part:

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice). Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

. . .

This provision does not, in my view, require that a plaintiff show bad faith on the part of the defendant as a precondition to recovering backpay. The requirement that the defendant should have "intentionally" discriminated means no more than "that the defendant meant to do what he did, that is, his employment practice was not accidental." Papermakers Local 189 v. United States, 416 F.2d 980, 996 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). It is clear that a plaintiff does not have to show bad faith in order to establish the commission of an unlawful employment practice under the Act; ". . . Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation." Griggs v. Duke Power Company, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). Accordingly, a plaintiff need show only a prohibited discriminatory consequence of an act intentionally undertaken; good faith on the part of the defendant, which must be, and in this case was not, pleaded by the defendant as an affirmative defense, Fed. R.Civ.P. 8(c), cannot insulate a defendant from a finding of discrimination and an order under § 2000e—5(g) enjoining

the unlawful practice. Since there is no requirement in the Act that a plaintiff show bad faith in order to establish his claim, we should not require it as a precondition to the awarding of damages— limited to backpay—intended to make the plaintiff whole.

We recognized in *Manning, supra,* that this provision of the Civil Rights Act gives district courts a degree of discretion in deciding whether to award backpay. *See* 466 F.2d at 815–816. The statutory standard empowers the courts to take "such affirmative action as may be appropriate." The district court has not specified why an award of backpay to these appellants would not be appropriate to remedy the wrong they admittedly have suffered at the hands of the union, and none is advanced by appellee. I recognize the fact that the district court made the determination that the union did not act in bad faith, but this is an immaterial consideration as I have shown above. Accordingly, at a minimum we should remand for additional findings.

Moreover, the union introduced no evidence at trial, and it has pointed to no evidence in plaintiffs' case to support its contention that it acted in good faith or to support the court's finding that it did not act in bad faith. Assuming that this finding was permissible despite noncompliance with Fed.R.Civ.P. 8(c), there appears to be no evidence to support it.

If we should assume, as the majority observes in the last paragraph of its opinion, that the standard of 29 U.S.C. § 185 governs this case, I still believe that we should at least remand the case for further consideration. In Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), the Court stated:

A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, *or* in bad faith. (Emphasis added.)

Bad faith is thus only an alternate predicate for a claim under § 301; a plain-

tiff can recover if he can show that the union acted arbitrarily or discriminatorily but not necessarily in bad faith. There is no indication that the district court considered these other elements in its resolution of plaintiffs' claim. Further, if bad faith is an essential part of a plaintiff's claim under § 301, then the findings of the district court are inconsistent, because the court found a breach of duty on the part of the union but then found that the union had not been guilty of bad faith.

Accordingly, I would, at a minimum, reverse and remand for additional findings. In the alternative, I would reverse the judgment of the district court and direct the entry of an award of backpay to plaintiffs in an amount equal to their wage loss less the amounts received from the employer in settlement of the claim against it and any other sums received in mitigation.