Jeanine STRYKER, on behalf of herself
and all others similarly situated

v.

REGISTER PUBLISHING COMPANY.

Civ. No. N–76–147.

United States District Court,
D. Connecticut.

Nov. 16, 1976.

Mary Ellen Wynn, New Haven, Conn., for plaintiff.

Carter LaPrade, New Haven, Conn., for defendant.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

NEWMAN, District Judge.

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* It raises the important issue of defendant's liability for back pay for overtime during a period when state legislation expressly prohibited the employment of women beyond specified maximum hours per day and per week. The plaintiff sues on behalf of herself and all others similarly situated for denial of the right of female employees to equal employment opportunity with men in earning overtime pay from April, 1969, to April, 1970.

For many years the state of Connecticut, like many other states, sought to shield the female members of its work force from exploitation by fixing limits on the maximum number of hours they could work in any day or week. In the period involved in this suit § 31–12 of the Connecticut General Statutes prohibited the employment of women in any manufacturing or mechanical establishment for more than nine hours in any day or forty-eight hours in any calendar week. The statute provided a maximum $25 fine for the first offense and a maximum $100 fine or thirty days imprisonment or both for any subsequent offense. The labor commissioner was empowered to grant limited exemptions from the restrictions during brief periods of emergency or peak demand.

The defendant publishes newspapers in New Haven, Connecticut. Prior to April, 1969, the defendant gave its male and female employees equal opportunities to work overtime in disregard of the requirements of § 31–12. In March of 1969 Edward J. Murphy, the defendant's personnel director, became aware that the company was in violation of § 31–12. He began a correspondence with the Connecticut Labor Department requesting a series of exemptions. Some partial and temporary exemptions were granted, but the Department refused to allow the defendant to employ women overtime on a regular and continuing basis. On January 19, 1970, the Deputy Commissioner of Factory Inspection wrote to Murphy:

> The hours for females and minors as spelled out in Section 31–12 of the General Statutes prevails. [sic]
>
> The Statute is a valid one and *must be enforced* by this office. [Emphasis in original].

It was during this period that the plaintiff made her complaint to the Equal Employment Opportunity Commission. As a response to plaintiff's complaint, the defendant decided as of April 2, 1970, that it would comply with Title VII rather than with § 31–12. Though the discriminatory practices have apparently ceased, plaintiff presses her claim for back pay on behalf of herself and those similarly situated for the period during which the defendant relied on the state statute to deny women equal opportunity to work overtime.[1]

In *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court put to rest much of the controversy over the appropriate standards for the lower federal courts to apply in deciding whether to award back pay to the victims of discrimination prohibited by Title VII. As the Court observed, back pay awards serve two purposes. They

---

1. By Pub. Act 73–65 (1973) the Connecticut General Assembly repealed the provision defendant relies on by eliminating the mention of women from the statute, and amended the statute to apply to persons under the age of eighteen years; persons 66 years or older, except with their consent; handicapped persons except with their consent and a doctor's certification; and disabled veterans, except with their consent and a doctor's certification.

provide a spur to speed the elimination of discriminatory practices, and they give full compensation to the injured parties. Congress intended the courts to interpret Title VII as generously as the National Labor Relations Board has interpreted the back pay provision of the National Labor Relations Act, upon which the corresponding provision of Title VII was modeled. The NLRB "since its inception, has awarded backpay as a matter of course—not randomly or in the exercise of a standardless discretion, and not merely where employer violations are peculiarly deliberate, egregious, or inexcusable." 422 U.S. at 420, 95 S.Ct. at 2372. Just as with the NLRA, the finding of a violation of Title VII should raise a presumption that back pay is owed.

It follows that, given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination. 422 U.S. at 421, 95 S.Ct. at 2373.

Prior to *Albemarle* a number of Court of Appeals cases had affirmed the trial court's exercise of discretion in denying back pay in Title VII suits where the defendants had relied on a state protective statute requiring the alleged discrimination.[2] In *Albermarle* the Supreme Court explicitly refused to rule on the correctness of these decisions. 422 U.S. at 423 n. 18, 95 S.Ct. 2362. The issue in the present case, then, is an open one, not only because of the Supreme Court's decision to intimate no opinion on the issue, but also because our circuit has never ruled on the question. Moreover, even the circuits that had confronted the problem prior to *Albermarle* did so only in the context of affirming a discretionary denial of back pay and never in the context of reversing a grant of back pay.

■ An examination of defendant's cases shows that on each occasion the Courts of Appeals were applying the broad discretion approach to back pay expressly rejected by the Supreme Court in *Albemarle.* For example, in *Williams v. General Foods Corp., supra,* at 407, the Seventh Circuit directed the trial court to "balance the various equities between the parties and decide upon a result which is consistent with the purposes of [Title VII] and the fundamental concepts of fairness. . . . 'In each case the merits of the plaintiff's claim and the public policy behind it must be balanced against the hardship on a good-faith employer.' "[3] This is the very sort of "equity [which] varies like the Chancellor's foot" that the Supreme Court renounced in favor of a more principled application of equitable standards to authorize rare departures from allowance of a favored remedy. 422 U.S. at 417, 95 S.Ct. at 2371.[4] Now the rule is clear

---

2. *Williams v. General Foods Corp.,* 492 F.2d 399 (7th Cir. 1974); *Wernet v. Amalgamated Meat Cutters & Butchermen,* 484 F.2d 403 (6th Cir. 1973); *Ash v. Hobart Mfg. Co.,* 483 F.2d 289 (6th Cir. 1973); *Kober v. Westinghouse Electric Corp.,* 480 F.2d 240 (3d Cir. 1973); *Manning v. Intl. Union,* 466 F.2d 812 (6th Cir. 1972), *cert. denied,* 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973); *Schaeffer v. San Diego Yellow Cabs,* 462 F.2d 1002 (9th Cir. 1972); *LeBlanc v. Southern Bell Telephone & Telegraph Co.,* 460 F.2d 1228 (5th Cir. 1972), *cert. denied,* 409 U.S. 990, 93 S.Ct. 320, 34 L.Ed.2d 257 (1972); *Rosenfeld v. Southern Pacific Co.,* 444 F.2d 1219 (9th Cir. 1971); *see also Garneau v. Raytheon Co.,* 341 F.Supp. 336 (D.Mass. 1972).

3. *See also Schaeffer v. San Diego Yellow Cabs, supra,* at 1006–1007.

4. The state of the law prior to *Albemarle* was confused. Conflicting standards were applied not only by different circuits but sometimes even within the same circuit. The Fourth Circuit panel that decided *Moody v. Albemarle Paper Co.,* 474 F.2d 134, 142 (4th Cir. 1973), had held by a divided vote that a plaintiff who proves a Title VII violation "should ordinarily be awarded back pay unless special circumstances would render such an award unjust." The Fourth Circuit *en banc* tentatively voted to modify, indicating a dispute within the circuit on the issue, although the *en banc* petition was ultimately denied for unrelated reasons. *See* 422 U.S. at 413 n.5, 95 S.Ct. 2362. Other circuits had followed the Fourth Circuit approach of awarding back pay as a matter of course. *See Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211 (5th Cir. 1974); *Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d 1364 (5th Cir. 1974); *Head v. Timken Roller Bearing Co.,* 486

that back pay should be awarded as a matter of course once a statutory violation is established unless the court can point to a reason for denying back pay that does not frustrate the central statutory purposes.

There can be no doubt that adherence to a state protective statute in the face of Title VII's explicit requirement of equal employment opportunity violates the statute. Even defendant's cases affirming the discretionary denial of back pay acknowledge as much. They have consistently held, prior to any discussion of the propriety of back pay, that a deliberate policy of allowing men to work longer hours than women is "an intentional violation of Title VII," and have stated that "[t]he fact that the Company may have been relying on a state statute does not make their actions any less of a violation." [5] Title VII itself compels this result,[6] for § 708, 42 U.S.C.A. § 2000e–7, provides that the statute relieves employers from liability under any state law "which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter." Under the Supremacy Clause of the Constitution, when it comes to a choice between Title VII and a state protective law, Title VII prevails.

Once the violation of Title VII is established, the award of back pay will normally be appropriate. But the Supreme Court in Albemarle did imply that there would be some circumstances that would justify the denial of back pay even though the statute had been violated. The Court gave almost no hint as to what these circumstances might be, apart from its remand in the case before it for determination of whether the defendants had in fact been prejudiced by plaintiffs' initial disclaimer of any intent to seek back pay and subsequent about-face. An examination of the briefs of the parties and amici curiae in Albemarle shows that the possibility that reliance on state protective legislation might meet the "special circumstances" requirement was raised several different times.[7] Justice Blackmun, concurring in the judgment, expressed his opinion that good-faith reliance on a presumptively valid state law would be relevant to deciding whether to award back pay. But Justice Stewart's opinion for the Court mentioned female protective legislation only in a footnote disclaiming any intent to decide the question, and did not even in dictum hint that reliance on state law would be a valid defense to the award of back pay or even an equity meriting consideration.

I am persuaded that the bare existence of a state protective law does not immunize an employer from liability for back pay under Title VII. Clearly it would "frustrate the central statutory purposes of

F.2d 870 (6th Cir. 1973). Still others had applied the "balancing the equities" test used in the state protective legislation cases. See text at note 2, supra. Since some of the "balancing the equities" cases came from circuits that had applied the more automatic standard in cases not involving protective legislation, the pre-Albemarle case law is conceivably open to the interpretation that the circuits were uniformly applying the two different tests in two different types of situations. See Respondents' Brief in Opposition to Petition for Writ of Certiorari, Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Albemarle itself, however, appears to have clearly rejected the "balancing the equities" approach.

5. See, e. g., Williams, supra, at 407; Ash, supra, at 292.

6. Although the Supreme Court declined to intimate an opinion on whether denial of back pay was appropriate when the defendant had relied on a state protective statute, it noted in the same footnote that 42 U.S.C.A. § 2000e–7 prescribes the effect Title VII has on state statutes inconsistent with it. 422 U.S. at 423 n.18, 93 S.Ct. 2362.

7. See Moody v. Albemarle Paper Co., 474 F.2d 134, 142 n.5 (4th Cir. 1973), suggesting in dictum that reliance on state protective legislation might be a "special circumstance." Among the briefs filed with the Supreme Court, the Respondents' Brief in Opposition to Petition for Certiorari, the Brief of the Lawyers' Committee for Civil Rights Under Law as Amicus Curiae, the Brief of Respondents, and the Brief for the United States and the Equal Employment Opportunity Commission as Amicus Curiae all suggested the same example, although the issue was not directly presented to the Supreme Court in an adversary context.

eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination" if an employer could rely on the existence of such a protective statute to defeat Title VII remedies when there can be no dispute that his duties under the federal statute completely supplant his duties under the conflicting state law. He would have no incentive to comply with federal law until an injunction entered against him. And the victims of the proven discrimination would not be made whole even though equal employment opportunity has been their right, despite any contrary state law, even since Title VII was enacted.

■ Nor should it make any difference whether a threat of prosecution under the state statute objectively existed or was subjectively thought to exist. Title VII, and particularly 42 U.S.C.A. § 2000e–7, would have provided a complete defense to a state prosecution. Thus I give no weight to defendant's assertion that it was "ordered into compliance" with the state statute, particularly where the liability it can claim to have feared had it lost in a prosecution for a first offense would only have been $25.

■ There may, however, be other "special circumstances" that justify denying back pay in this case. The Supreme Court in *Albemarle* gave very sparse indication of what such circumstances might be. The statute itself makes one exception in 42 U.S.C.A. § 2000e–12(b), providing that

.  .  .  no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission  .  .  .

This exception may be applicable in the present case. The defendant asserts that prior to August 19, 1969, the EEOC took the position that state protective laws regarding women were unaffected by and constituted exceptions to federal law. If defendant can plead and prove actual reliance on a written interpretation or opinion of the Commission, it might have a good defense for back pay during the period up to August 19, 1969. *Ex post facto* reliance on what was possibly a rather ambiguous position [8] will not be sufficient to immunize the defendant, but a *bona fide* decision made in the period in question to rely on the EEOC's interpretation can have that effect. The affidavits do not make clear whether there was such actual reliance. The parties will have an opportunity to present evidence on the issue.

■ There may well be other equities that will be relevant in the Court's decision whether or not to grant back pay.[9] Since the allowance of back pay is an equitable remedy, the fullest possible exploration of these equities will be in order. Relevant considerations may include the prevalence of overtime work among the defendant's male employees during the period of the discrimination, the expectation that overtime work would be taken on as a matter of course, the readiness of the female employees to work overtime during the periods when exemptions were granted and after the defendant stopped complying with § 31–12, and the amount of overtime work generally available. Discovery may continue on these sorts of issues.

Even under the liberal *Albemarle* standard it is impossible to hold at this stage that back pay is required as a matter of law. It may well turn out after all the evidence is in that due regard for all these factors will preclude the award of back pay or limit the allowable scope of a recovery. Given the equitable nature of the remedy, presentation of evidence relevant to the

8. For a discussion of the EEOC's vacillation, see the opinion of District Judge Weber in *Kober v. Westinghouse Electric Corp.*, 325 F.Supp. 467 (W.D.Pa.1971), aff'd, 480 F.2d 240 (3d Cir. 1973).

9. *See Equal Employment Opportunity Comm'n v. Enterprise Ass'n Steamfitters Local No. 638*, 542 F.2d 579 (2d Cir., 1976).

possibly overlapping issues of entitlement to and amount of back pay seems preferable to bifurcation of those issues. However, separate trial is warranted on one issue that concerns entitlement to relief, namely—whether defendant relied in good faith on a written interpretation or opinion of the Commission.

Accordingly, defendant's motion for summary judgment is denied, plaintiff's motion for summary judgment is denied, and defendant's motion for a separate trial is granted pursuant to Fed.R.Civ.P. 42(a) only as to the availability of a defense pursuant to 42 U.S.C.A. § 2000e–12(b)(1).