The GUARDIANS ASSOCIATION OF the NEW YORK CITY POLICE DE-PARTMENT, et al., Plaintiffs,

v.

CIVIL SERVICE COMMISSION OF the CITY OF NEW YORK, et al., Defendants.

The HISPANIC SOCIETY, et al., Plaintiffs,

v.

CIVIL SERVICE COMMISSION OF the CITY OF NEW YORK, Defendant.

POLICEWOMEN'S ENDOWMENT AS-SOCIATION, INC., et al., Plaintiffs,

v.

CIVIL SERVICE COMMISSION OF the CITY OF NEW YORK, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

CITY OF NEW YORK, et al., Defendants.

Nos. 79 Civ. 5314, 80 Civ. 5603, 81 Civ. 0537 and 81 Civ. 4510 (RLC).

United States District Court, S. D. New York.

Nov. 24, 1981.

Puerto Rican Legal Defense & Education Fund, Inc., New York City, for plaintiffs Hispanic Society, The Guardians Association, et al.; Kenneth Kimmerling, of counsel.

Willkie, Farr & Gallagher, New York City, for Policewomen's Endowment Association, Inc.; Jeanne M. Luboja, Howard C. Buschman, III, New York City, Marcia D. Sheldon, of counsel.

John S. Martin, Jr., U. S. Atty. S. D. of New York, New York City, for the United States of America; Nancy E. Friedman, Barbara L. Schulman, Asst. U. S. Attys., New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for the City of New York; Judith A. Levitt, New York City, of counsel.

H. Elliot Wales, New York City, for amicus Coalition.

Gordon & Shechtman, P. C., New York City, for the Joseph Esposito petitioners; Kenneth E. Gordon, New York City, of counsel.

Debevoise & Liberman, Washington, D. C., for the intervenor Sargeants Candidates Association; Richard K. Walker, Washington, D. C., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Although the above four cases concern different subject matter (79 Civ. 5314 involves examinations for entry level police officers and 80 Civ. 5603, 81 Civ. 0537 and 81 Civ. 4510 involve examinations for promotion to police sergeant), the two stipulations of settlement proposed for disposition of these class actions may logically be discussed and determined in one opinion since the basic determinative considerations which affect decision are substantially the same in all of the cases.

*Guardians Association of the New York City Police Department, et al. v. Civil Service Commission of the City of New York,* 79 Civ. 5314 (RLC) is the oldest of the four cases and the only one that went to trial. The lawsuit was filed on October 5, 1979. Here plaintiffs complained that examination # 8155 for appointment of entry level police officers in the New York City Police Department had a racially discriminatory impact on black and Hispanic candidates. The court found that plaintiffs had sustained their burden of establishing a *prima facie* claim that Title VII of the United States Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, had been violated. The Policewomen's Endowment Association of the City of New York and the United States filed *amicus curiae* briefs in support of plaintiffs' claim that the examination violated Title VII. Defendants were or-

dered as a long term goal to seek to achieve 30 percent representation of blacks and Hispanics on the police force and as an interim goal to appoint 50 percent of the entry level police officers from among qualified black and Hispanic applicants, to use the eligibility list derived from examination # 8155 as the pool from which to select such officers, and to develop procedures for selection and appointment of entry level police officers consistent with Title VII. 484 F.Supp. 785 (S.D.N.Y.1980). On appeal, the interim requirement that 50 percent of the entry level police officers appointed be black and Hispanic was modified to 33⅓ percent. In holding that Title VII had been violated, the court of appeals stressed the discriminatory nature of the use of examination # 8155 eligibility list in a rank order as the basis for selection. 630 F.2d 79 (2d Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981).

While the matter was on appeal, a new examination (# 1010) for appointment to entry level positions was developed and given. 35.4 percent of those taking, and 28.5 percent of those passing, this examination were black and Hispanic. If rank order was the basis for appointment, 18 percent of the 8,000 top ranked candidates would be black and Hispanic.

Plaintiffs contended that examination # 1010, as did the prior examination, violates Title VII and the city was equally confident that no violation had occurred. Preparations for trial were underway, with the parties readying themselves for a trial date in June. During this period negotiations were going forward to settle the case. The court was notified in June that settlement had been reached in principle, and the stipulation of settlement, signed by the parties and agreed to by the amicus curiae, was filed and signed on August 6, 1981, by the court. Notice of the proposed settlement was sent to all members of the class and hearing on the proposal was scheduled for October 2.

The agreement provides for the use of the results of examination # 1010, with 64 accepted as the passing score. The rank order eligibility list of examination # 1010 is to be divided into two parts. All candidates scoring equal to or higher than the 12000th person on the list are to be randomly selected by computer for further processing for selection for appointment to the January, 1982 class of the Police Academy. Candidates in this group not selected, unless rejected for failure to meet other requirements, are to receive priority consideration for appointment to entry level positions above all other candidates on the # 1010 eligibility list. All the remaining candidates scoring 64 or above are to be randomly selected for appointment as the need arises. It is anticipated that 3500 to 4500 appointments are to be made within the next two years and that the list will be exhausted. It is also agreed that the list is to be used until exhausted or until it expires four years from the date of its promulgation.

The names and scores of candidates who took examination # 1010 are not to be revealed to the New York City Police Department, and any such information currently in the possession of the department is to be turned over to the New York City Department of Personnel. No one in the police department is to request any candidate to reveal his or her test score. The police department is to receive only the computer processed list of candidates prepared in accord with the terms of the agreement.

The city is committed to undertaking a professionally developed criterion related validity study to determine the degree of correlation between how well a candidate performed on examination # 1010 and how well the candidate, if appointed, subsequently performs as a police officer. Plaintiffs' experts are to be accorded timely opportunity to comment on the development and conduct of this study.

The *Hispanic Society, et al. v. Civil Service Commission of the City of New York, et al.,* 80 Civ. 5603 (RLC), was filed on October 2, 1980. This suit was instituted on behalf of a class of Hispanic and black examinees who had either failed promotion to sergeant's examination # 8539 or had

passed the test but are too low on the eligibility list to have any reasonable expectation of being reached for appointment in the foreseeable future. Plaintiffs alleged that the test had a discriminatory impact on blacks and Hispanics in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

*Policewomen's Endowment Association, et al. v. Civil Service Commission of the City of New York, et al.*, 81 Civ. 0537 (RLC), was filed on January 28, 1981, on behalf of a class of women examinees who, like the blacks and Hispanics, had either failed examination # 8539 or received such a low passing grade that appointment to the position of sergeant was not a reasonable expectation. The women claimed gender based discrimination in violation of Title VII.

In both cases injunctive relief was sought to bar the city from making use of the rank order results of the test. The cases were consolidated in effect with the filing of the Policewomen's case, although no formal order to that end was entered.

*United States v. City of New York, et al.*, 81 Civ. 4510 (RLC), was filed on July 21, 1981. In that lawsuit the government charged that the city was engaged in a pattern or practice of discrimination against women, blacks and Hispanics in the selection and promotion of police officers in the New York City Police Department in violation of Title VII. Relief enjoining this pattern or practice was sought.

A group of individuals representing and on behalf of the Sergeant's Candidates Association moved to intervene as party defendants. The Sergeant's Candidates Association is an organization composed of non-minority members who had passed examination # 8539 and who had reasonable expectations of promotion if the examination's validity was upheld. The Sergeant's Benevolent Association also moved to intervene as party defendants in 80 Civ. 5603. This organization consists of members of the police force who had already attained sergeant status. A coalition of eight fraternal organizations in the police depart-

ment also moved to intervene as party defendants.

On March 2, 1981, the motions of the Sergeant's Candidates Association and the Sergeant's Benevolent Association were granted pursuant to Rule 24(b), F.R.Civ.P. The members of the Sergeant's Candidates Association have a clearly defined interest in the outcome of the litigation because a conflict might develop between the city and the non-minority candidates and because the non-minority candidates might have a unique viewpoint to contribute to the litigation. The Sergeant's Benevolent Association was permitted to intervene despite its attenuated interest in the outcome of the litigation because, if successful, plaintiffs might be accorded a constructive seniority over some officers currently sergeants. Since all the real interests of non-minority candidates would be adequately protected by the city and the above intervenors, the motion of the fraternal groups was denied.

The Hispanic Society case was certified as a class action on April 27, 1981—the class consisting of all blacks and Hispanics who had taken examination # 8539 and had either failed the test or passed it with a score so low as not to afford any reasonable expectation of promotion to the rank of sergeant in the foreseeable future. On March 30, 1981, the Policewomen's Endowment Association sought class certification on behalf of women applicants who had taken the examination and had either failed or had passed with a grade so low that there could be no reasonable expectation of appointment.

While the parties were preparing for trial, they were also engaged in ongoing, serious settlement negotiations, and on June 22, 1981, a settlement agreement was reached. The stipulation of settlement provides for consolidation of the three cases and a grant of intervenor defendant status in all the cases to the Sergeant's Candidates Association and the Sergeant's Benevolent Association. It further provides for certification of the class of female applicants sought by Policewomen's Endowment Association.

The agreement allows for promotion from eligibility list # 8539 as modified in the agreement until the list shall be exhausted and all candidates on the modified eligibility list have been promoted. The city is not required to continue to use the list beyond July 9, 1984. Of all the applicants taking examination # 8539, 2.38 percent were women, 9.29 percent were black and 3.89 percent were Hispanics. The agreement provides that of the appointments made in each successive class or group of appointments from the eligibility list, 2.38 percent shall be women, 9.29 percent shall be black and 3.89 percent shall be Hispanic. The city agrees to promote all women, blacks, and Hispanics on eligibility list # 8539 to achieve these percentages of female, black and Hispanic police sergeants. When the eligibility list of women, blacks and Hispanics is exhausted, the city agrees to seek additional women, blacks and Hispanic applicants for promotion by lowering by one score level the cut off point for placement on eligibility list # 8539. The process is to be repeated when necessary until the appropriate number of qualified female, black and Hispanic candidates to meet the agreed upon percentages have been secured. A sufficient number of women shall be added to the eligibility list so as to be evenly distributed among the final three groups or classes actually promoted from the eligibility list. Black and Hispanic females are to be included in arriving at this equation.

Five working days before any promotions are announced, the city agrees to provide counsel for all parties with a list of those candidates to be promoted identified by name, race, sex and ethnicity. Ten days before the first of the last three groups of candidates are to be promoted, the city agrees to provide counsel for all parties with a list of these officers identified by name, race, sex and ethnicity.

The stipulation also provides that the parties are to seek to agree upon an expert or experts in psychometrics and industrial psychology to be appointed and paid by the City of New York to develop new selection procedures for promotion consistent with Title VII. The process of developing new selection procedures is to commence no later than July 1, 1982. If the parties are unable to agree on the experts, the city will hire its own to proceed with planning and development of the new selection procedures. Plaintiffs may secure their own experts who will be given a reasonable opportunity to review the planning and development of the city's experts. Plaintiffs' experts will be afforded opportunity to file objections and criticisms of the proposals suggested by the city experts. Notice of this proposed settlement was sent to all members of the class.

A hearing was held on the proposed settlement in 79 Civ. 5314 on October 2, 1981. No objection had been filed with the court within the time constraints set out in the notice, and no one appeared at the hearing to object to the settlement. At the October 16 hearing on the proposed settlement in the other three cases, however, objectors to the settlement in *Guardians* appeared under the misapprehension that the proposed settlement of the litigation involving the appointment of entry level police officers was at issue. Although the objections are untimely, the objectors appeared *pro se* and the court was struck by their sincerity and seriousness. Accordingly the court chooses to treat the objections as if they had been made in a timely fashion.

One of the candidates, Guy Castellano, was represented at the hearing by his father and another candidate, Eugene O'Donnell, appeared on his own behalf. Both are non-minority applicants for entry level appointment to the police force; both are 29 years old, and each scored 94 on examination # 8155. In complying with the court order to select one minority entry level candidate for every two non-minority candidates appointed from the # 8155 eligibility list, the city is selecting minority candidates who scored above 85 and has reached non-minority candidates scoring 95. There is no assurance that non-minority candidates with a score of 94 will now be reached. O'Donnell and Castellano, having reached age 29, are no longer eligible to take any

new entry level police officer examinations. Unless selected from this list, therefore, their hopes of becoming a New York City police officer will never be realized.

O'Donnell was very impressive at the hearing. I was struck by his sincerity, earnestness and ambition to become a member of the police force. While Guy Castellano was not present, he had written some months earlier, not about this specific issue, but about the fairness and reasonableness of the court's decree as it affected him and other similarly situated non-minority applicants. Castellano made his point without resort to the racism, bigotry, or hysteria that is a common feature of most of the letters sent to the court commenting on its decision. I am personally convinced that both these men would make superior police officers and sincerely hope that their ambitions to be policemen are not thwarted in the remediation of discrimination against blacks and Hispanics.

However, these objections and concerns do not involve the validity of the settlement under consideration. It is probably true that non-minority candidates who scored 94 on examination # 8155 may be in jeopardy of not being reached because examination # 1010 makes available a larger pool of black and Hispanic candidates and frees the city of the necessity of selecting minority candidates who scored below 85 on examination # 8155 in order to preserve the ratio of appointment of one black and Hispanic entry level police officer to every two such non-minority police officers. Moreover, under the agreement the city is not required to appoint blacks and Hispanics to ⅓ of the available entry level positions but only to approximately 28–29 percent of such positions. Availability of this pool, however, occurred because a new test was administered, not because a settlement over the use of its results was reached. Moreover, while the city is empowered to use the examination # 8155 eligibility list for four years from the date of its promulgation, it may terminate use of the list before that time. Thus, the proposed settlement need not affect the selection of 29 year old non-minority candidates who scored 94 on the preceding examination. Whether the New York City Police Department decides to utilize the 8155 eligibility list to select non-minorities who scored 94 or to abandon its use before reaching this group is an issue separate and apart from whether the proposed settlement in question warrants court approval. While, as indicated, the court has a great deal of concern that O'Donnell and Castellano not be victimized by modifications being made in the selection and appointment of entry level police officers, it is a court of limited jurisdiction, empowered only to mandate non-discriminatory selection procedures. The proposed settlement insures such processes. Nonetheless, it is the court's hope that the Commissioner of Police will select at least the 29 year old non-minority candidates who scored 94 on examination # 8155 before abandoning the list.

In the other three cases October 9 had originally been set as the date for hearing on the settlement proposed, but that date was subsequently changed to October 16. Objections to the settlement were filed by eight fraternal organizations in the police department and by petitioners in *Esposito v. Nadel*, Index No. 21835/80, a New York State court proceeding brought by a group of applicants who had failed examination # 8539 and who challenged the scoring on the examination alleging that credit should have been given on several questions for answers which were allegedly as good or better than the answer scored as the correct one.

■ H. Elliot Wales, Esq., articulated the basic objections to quotas of the fraternal organizations he represented. Not being members of the class and not being non-minority candidates who had passed examination 8539 and who could contend that their expectation of promotion might be affected by the settlement, the fraternal organizations have no standing to object to the settlement.

Kenneth Gordon, Esq., counsel for petitioners in *Esposito v. Nadel*, withdrew their opposition to the settlement on the repre-

sentation of counsel for the city and the concurrence of counsel for the Hispanic Society, the Policewomen's Endowment Association and the government that the language of the settlement would not preclude the petitioners in *Esposito* from being placed on the eligibility list if they succeeded in their claims and were held to have passed the examination, and that the proposed agreement does not preclude the city from using the examination # 8639 eligibility list after June 9, 1984, if state law requires.

Counsel for the Sergeant's Candidates Association announced that that organization approved and supported the settlement in that all of the non-minority candidates who passed examination # 8539 could reasonably expect eventual promotion from the eligibility list although in some cases not as quickly as might have occurred prior to this litigation.

*Discussion*

 Settlements by the parties of their disputes rather than by court disposition is preferred, *Newman v. Stein*, 464 F.2d 689 (2d . Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972), and approval is generally left to the sound discretion of the trial court. *Reynolds v. NFL*, 584 F.2d 280, 282–83 (8th Cir. 1978). Among the chief considerations determinative of court approval is the fairness, wisdom and adequacy of the agreement. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 462–63 (2d Cir. 1974). The parties involved in reaching these settlements were the city, counsel representing a certified class of black, Hispanic and women applicants who had failed examination # 1010 or promotion to sergeants examination # 8536 or who scored so low as to have no reasonable expectation of appointment, the United States, and counsel for non-minority male applicants who had passed the promotion to sergeants examination # 8536 with scores giving them a reasonable expectation of appointment. Thus, those most directly affected by the use of the examinations and the agencies chiefly concerned with protecting the public interest fashioned and approved the suggested compromise as best suited to accommodate the individual and public interests affected. There were actually no real objectors to the compromise reached in regard to examination # 1010 and the parties most adversely affected by the agreement concerning examination # 8536 approved the settlement. No applicant on the eligibility list has objected to the settlement, nor have any objections been voiced by any female, black or Hispanic applicant who is either a member or non-member of the class.

 When a settlement has been the subject of arms-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement. *Munsey Trust v. Sycor, Inc.*, 457 F.Supp. 924, 926 (S.D.N.Y. 1978) (MacMahon, J.). Approval of the settlement by experienced counsel, *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977), and participation in the negotiations resulting in the proposed settlement by the government agency committed to protecting the public interest in the enforcement of the law and its approval of the settlement weigh heavily in favor of approval of the settlement. *Marshall v. Holiday Magic, Inc., supra*, 550 F.2d at 1178.

Undoubtedly these settlements are surely in the public interest. They remove a controversy regarding the method of appointment and promotion of police officers in the New York City Police Department from the courts, where some aspects of the problem have now been for some years, *see Guardians Association v. Civil Service Commission of New York*, 490 F.2d 400 (2d Cir. 1973); *Guardians Association v. Civil Service Commission of New York*, 431 F.Supp. 526 (S.D.N.Y.), *vacated and remanded on other grounds*, 562 F.2d 38 (2d Cir. 1977), *on remand*, 466 F.Supp. 1273 (S.D.N.Y.1979), *aff'd in part, rev'd in part, and remanded*, 633 F.2d 232 (2d Cir. 1980); *Guardians As-*

sociation v. *Civil Service Commission of New York*, 484 F.Supp. 785 (S.D.N.Y.), *aff'd in part, vacated in part, and remanded,* 630 F.2d 79 (2d Cir. 1980), and assures that there will be more female, black and Hispanic police officers and sergeants on the New York City police force than before and commits the parties to combine forces to seek to devise new testing devices consistent with Title VII guidelines and to a criterion validity study that may enable the city to devise tests in the future which will actually measure skills required to be a first grade police officer in the City of New York.

The settlements are approved.

IT IS SO ORDERED.