The GUARDIANS ASSOCIATION OF the NEW YORK CITY POLICE DEPARTMENT, the Hispanic Society of the New York City Police Department, Nydia I. Diaz, James Michael Hidalgo, Wilfred Cebollero, Andre Lopez, Reinaldo Salgado, Denise Santos, Deborah Holmes, and Pamela Obey, individually and on behalf of all those similarly situated, Plaintiffs,

v.

CIVIL SERVICE COMMISSION OF the CITY OF NEW YORK, Department of Personnel of the City of New York, and the New York City Police Department, Defendants.

No. 79 Civ. 5314 (RLC).

United States District Court,
S. D. New York.

May 25, 1982.

Cesar A. Perales, Kenneth Kimerling, Puerto Rican Legal Defense and Educ. Fund, Inc., New York City, for plaintiffs.

Frederick A. O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendants; Judith A. Levitt, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The plaintiff class moves for an order awarding it seniority and back pay relief.

Assuming familiarity with the history of this action, the court will summarize briefly the essential information. The court found that plaintiffs had sustained their burden of establishing a *prima facie* claim that Title VII of the United States Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, had been violated by defendants' use of Examination No. 8155 for appointment of entry level police officers to the New York City Police Department. *Guardians Association of the New York City Police Department, et al. v. Civil Service Commission of the City of New York, et al.*, 484 F.Supp. 785 (S.D.N.Y. 1980) (Carter, J.). On appeal, the Second Circuit held that Title VII had been violated, but modified the court's remedial order in some respects. 630 F.2d 79 (2d Cir. 1980), *cert. denied*, 452 U.S. 785, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). Upon the remand from the Court of Appeals, an order was entered which certified the plaintiff class, defined as all black and Hispanic candidates who took Examination No. 8155 (¶ 2), enjoined defendants from using the results of 8155 for the selection of police officers unless one third of all appointees were class members (¶ 3) and reserved for plaintiffs the opportunity to demonstrate an entitlement to an award of back pay and/or constructive seniority. (¶ 6).

On November 24, 1981, the court approved settlements in four cases, including the instant action. 527 F.Supp. 751. While not impacting directly on the prior rulings concerning 8155, the settlement approved the use of the results of a new test, No. 1010, under specified conditions. The court noted the probability that 1010 would be substituted for 8155. The settlement in no way impairs plaintiffs' right to seek back pay and/or constructive seniority pursuant to paragraph 6 of the September 23, 1981 order.

The instant motion seeks back pay and constructive seniority for two segments of the plaintiff class. The first sub-class consists of those 140 class members appointed to the police department in September, 1980, in order to raise the percentage of minorities hired pursuant to Examination No. 8155 to the requisite 33.3 percent.[1] These plaintiffs seek back pay and constructive seniority retroactive to November, 1979, the date when 415 police officers were hired in accordance with a racially discriminatory application of 8155's results.

The second sub-class is made up of those blacks and Hispanics who took Examination No. 8155 and were not appointed thereunder, but who have taken Examination No. 1010 and expect to be hired in the future. These plaintiffs request back pay and constructive seniority as of the last regular appointment from Examination No. 8155.

■ Back pay relief is essential to the "twin statutory objectives" of Title VII, "eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Company v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); *Association Against Discrimination In Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 288 (2d Cir. 1981). Similarly, a seniority remedy ordinarily will be necessary "to achieve the 'make-whole' purposes of the Act." *Franks v. Bowman Transportation Company, Inc.*, 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). After a finding of unlawful discrimination, the denial of

1. The parties dispute the number of class members belonging to the first sub-class. Defendants claim that had the one-third ratio been in place when they filled 415 positions in November, 1979, 138 minorities would have been hired. Since 45 minorities were appointed at that time, defendants argue that only 93 members of the first sub-class even have arguable claims for back pay and seniority. Defendants cannot rely on their own arbitrary hiring quota to limit plaintiffs' relief. The fact is that there was no one-third rule in effect in November, 1979, and, in order to comply with Title VII, defendants were ordered to make sure that 33.3 percent of the *total* appointees from Examination No. 8155 were black or Hispanic. Since 140 hirings were necessary to obviate 8155's discriminatory effect, all those hired stand in the same shoes with respect to the relief sought. This approach has been adopted by the Second Circuit. *Association Against Discrimination In Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2d Cir. 1981).

either type of relief is permissible "'only for reasons which, if applied generally, would not frustrate the central statutory purposes'" of Title VII. *Id.* at 771, 96 S.Ct. at 1267.

■ Defendants contend that liability was predicated upon their compliance with state laws mandating rank-ordered appointments and that, given those special circumstances, a denial of back pay and seniority would not run afoul of *Albemarle*'s general rule. The Supreme Court explicitly refused to discuss the correctness of decisions denying back pay in cases where employer discrimination resulted from compliance with "female protection" statutes found inconsistent with Title VII. *Albemarle, supra* at 423 n.18, 95 S.Ct. at 2374 n.18. The central purposes of the Act would be frustrated, however, if the mere existence of a state statute could immunize an employer from back pay liability. *Stryker v. Register Publishing Company,* 423 F.Supp. 476, 479–80 (D.Conn.1976). With an unenforceable state law as a shield, an employer would have "no incentive to comply with [superior] federal law until an injunction entered against him." *Id.* at 480.

Even if the question reserved by the *Albemarle* footnote remains open, defendants cannot properly avail themselves of a "state statute" exception to the general rule favoring back pay awards. First, it is not clear that New York law requires rank-ordered selection for all civil service positions. *See* N.Y. Civil Service Law § 44 (McKinney's 1973) ("The competitive class shall include all positions *for which it is practicable* to determine the merit and fitness of applicants by competitive examination") (emphasis added). Furthermore, rank-ordering is not necessarily inconsistent with Title VII, *see Guardians Association of the New York City Police Department, supra,* 630 F.2d at 104, so defendants conceivably could have complied with both state and federal regulations.

■ Focusing on the "make-whole" policy underlying Title VII, defendants assert that neither sub-class merits the relief sought. As for the 140 applicants hired to meet the required one-third rate of minori-

ty appointments under 8155, defendants contend that back pay and seniority relief would constitute a windfall. Defendants argue that had the examination been used in a non-discriminatory manner, fewer minority candidates would have been accepted and different individuals might have filled the available slots.

Examination No. 8155 was not, however, used in a non-discriminatory manner, and defendants bear the responsibility for that failure. In *Association Against Discrimination In Employment, Inc., supra,* the Second Circuit upheld back pay and seniority relief to plaintiffs indistinguishable from those in the first sub-class. There, defendant fire department was ordered to make its next 73 offers of employment to minorities and to provide seniority and back pay relief. *Id.* at 284–9. The back pay reimbursement system approved by the Court of Appeals was not designed to insure that the 73 class members who would have been hired but for defendants' discriminatory actions got the benefits, but only to insure that 73 victims of discrimination received the award. *See id.* at 288–9. Moreover, the 73 figure was derived not by estimating the number of minorities who would have been accepted under a fair original procedure, but by computing the number of offers needed to bring the total hirings under the test to non-discriminatory proportions. *Id.* at 285. The circuit's decision thus conformed to the two general principles of back pay computation: "(1) unrealistic exactitude is not required, [and] (2) uncertainties . . . should be resolved against the discriminating employer." *Pettway v. American Cast Iron Pipe Company,* 494 F.2d 211, 261 (5th Cir. 1974), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1021; 59 L.Ed.2d 74 (1979). Despite the lack of certainty that non-discriminatory use of 8155 would have resulted in the hiring of the same 140 minorities in November, 1979, as were accepted in September, 1980, the members of plaintiffs' first sub-class must be granted back pay and seniority as of November, 1979.

*Association Against Discrimination In Employment, Inc.* supports defendants' claims with respect to the second sub-class. There, the number of discriminatees award-

ed back pay relief was determined by calculating how many minority firefighters would have to be offered positions to raise the percentage of minority offerees to 41 percent of the total hired pursuant to the discriminatory examination. *Id*, at 285. In the instant case, the Court of Appeals ruled that "[t]he only hiring remedy justified . . . is a compliance remedy." 630 F.2d at 113. Defendants were afforded the option of making further appointments from the examination 8155 candidates so long as "such hiring achieves a minority ratio of 33%, taking into account those already hired as a result of the exam." *Id.* While it would frustrate both purposes of Title VII to permit defendants to perpetuate their illegal activities by denying back pay and seniority benefits to minorities hired so as to bring 8155 into compliance with the Act, it would contradict both the relevant precedents and the circuit's decision in this case to extend such relief to the second sub-class.

Plaintiffs' positions with respect to the two sub-classes are inconsistent. They concede that a "non-discriminatory examination would have resulted in an additional 140 class members being hired in November, 1979," Plaintiffs' Reply Memorandum of Law at 8, yet they insist that but for defendants' discrimination the second sub-class also would have been appointed earlier. *See id.* at 9–10. This view is contradicted by the cases cited by plaintiffs.

The Supreme Court has made clear that compensatory relief is available to those "who actually obtain . . . jobs under the court order." *Franks, supra* at 772. Neither *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496 (2d Cir. 1980) nor *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), are on point. In both cases, individual plaintiffs asserted that they *would have been hired* but for a discriminatory examination, thus placing the burden on defendants to demonstrate that they would not have been hired even absent discrimination. Plaintiffs here do not make such a bold claim, asserting only that they, along with the 140 members of the first sub-class, were the victims of discrimination. Only 140 minorities were in

fact victims here since, plaintiffs admit, only 140 positions were open. Precise identification of the actual victims being impossible, the court sanctioned a reasonable procedure by which 140 class members would receive compensation for their injuries. These 140, the first sub-class, are the only ones who fit *Franks'* criteria. Although unrealistic exactitude is not required in framing Title VII relief, a court's inability to attain exactitude does not excuse an expansion of the total compensation due. *See United States v. United States Steel Corporation*, 520 F.2d 1043, 1055 (5th Cir. 1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976) (in framing class-wide back pay relief, the "court should award the back pay to the minority employees who, in its sound judgment, would have occupied those vacancies but for discrimination," while avoiding granting a " 'windfall to the class at the employer's expense' "); *Patterson v. Youngstown Sheet and Tube Company*, 475 F.Supp. 344, 354 (N.D.Ind.1979), *aff'd*, 659 F.2d 736 (7th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 674, 70 L.Ed.2d 641 (1981) (same).

Plaintiff's motion is granted with respect to the first sub-class and denied with respect to the second.

SETTLE ORDER.