**VULCAN SOCIETY OF The NEW YORK CITY FIRE DEPARTMENT, INC., et al., Plaintiffs,**

v.

**CITY OF NEW YORK, et al., Defendants,**

**and**

**Captain Eligibles Association, Inc., and Daniel C. Svrcek, individually and as President of the Captain Eligibles Association, Inc., Intervenor-Defendants,**

**and**

**Uniformed Fire Officers Association, Local 854, International Association of Firefighters, AFL–CIO, Intervenor-Defendant.**

No. 82 Civ. 0425 (LBS).

United States District Court, S.D. New York.

Feb. 8, 1983.

Teitelbaum & Hiller, P.C., Herbert Teitelbaum, Richard J. Hiller, New York City, for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, Judith A. Levitt, Asst. Corp. Counsel, New York City, for defendants.

A. Lawrence Washburn, Jr., New York City, for intervenor-defendants Captain Eligibles Ass'n and Daniel C. Svrcek.

Gordon, Shechtman & Gordon, P.C., Murray A. Gordon, Ronald H. Shechtman, Kenneth E. Gordon, New York City, for intervenor-defendant Uniformed Fire Officers Ass'n, Local 854, Intern. Ass'n of Firefighters, AFL–CIO.

## OPINION .

SAND, District Judge.

A stipulation of settlement of this class action is before the Court for its consideration and approval pursuant to Fed.R.Civ.P. 23(e). The litigation was commenced in January, 1982 by the Vulcan Society of the New York City Fire Department, an association of black firefighters. The Vulcan Society challenges Civil Service Examination No. 510, used for promotion to the position of Captain in the New York City Fire Department, as violative of Titles VI and VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d *et seq.* and § 2000e *et seq.,* as well as rights guaranteed by 42 U.S.C. § 1981, § 1983, and the Fourteenth Amendment to the United States Constitution. The New York City Department of Personnel, the Personnel Director of the New York City Department of Personnel, the New York City Fire Department and the Fire Commissioner of the New York City Fire Department (the "New York City defendants") are named as defendants in the case. . The Captain Eligibles Association, Inc., representing those who passed Examination No. 510, and the Uniformed

Fire Officers Association, Local 854 ("Local 854" or the "Union") were granted leave to intervene as party-defendants, but Local 854 thereafter withdrew.

The settlement, submitted to the Court for its approval on September 30, 1982, establishes a promotion list based on the results of Examination No. 510, as augmented by a component that guarantees that a sufficient number of black firefighters will be promoted so as to achieve a hiring ratio of 3.7%. The 3.7% ratio ensures that the number of blacks promoted from the list as compared to the total number of persons promoted from the list corresponds to the percentage of blacks who were eligible for and who took Examination No. 510 among the total number of candidates who were eligible for and took the examination. In order to achieve this ratio under the settlement, a sufficient number of black candidates who took the examination would be added to the list after all black candidates whose names appear on the current list have been considered. The black officers added to the list would be selected by lowering the examination cut-off score by one score level and then ranking all black candidates as if the original cut-off score had been set at that lower level. This process would be repeated to ensure availability of black candidates. Promotions would be made from the list until it is exhausted or until the expiration of four years, whichever comes first. If the eligible list expires before it is exhausted, the Fire Department would be required to determine the number of black candidates who had been promoted from the list and who would not have been promoted were it not for the promotion ratio. To ensure that no eligible candidate is deprived of promotion by virtue of this procedure and the expiration of the list, an equal number of additional appointments would be made from the list after its expiration but before any other candidates are promoted from a subsequent eligibility list.

The settlement is supported by counsel for the plaintiff class, all New York City defendants, and the Captain Eligibles Association. At the time the settlement was proposed, one of the defendant-intervenors, Local 854, indicated its opposition to the settlement. Acknowledging in subsequent court papers that it faced "one of the most difficult decisions which the leadership of [the] union has had to make," Letter of Ronald H. Shechtman, Counsel for Local 854, dated January 24, 1983, at 4, the Union took the position that the proposed settlement unlawfully furthered the use of an admittedly discriminatory examination by relying in part on the results of that examination for purposes of future promotion within the Fire Department. According to the Union, the proposed settlement implicitly recognizes the legal invalidity of Examination No. 510 by establishing a racially-based quota. Nevertheless, the Union pointed out, the settlement employs the results of that examination for purposes of promotion within the Fire Department well beyond the time necessary to develop a new examination. Moreover, the Union argued, the settlement prolongs the use of the examination results beyond the time the promotion list would have expired under New York Civil Service Law had it not been challenged. The Union then expressed a preference that the Court order the establishment of a new eligibility list based on a new examination as soon as practicable.

Subsequent to the filing of its papers expressing opposition to the proposed settlement, Local 854 retracted its objections and withdrew as a defendant-intervenor. Notice of the proposed settlement was thereafter mailed to all class members. A hearing was held on January 19, 1983 at which time the views of the parties and interested class members were presented to the Court.[1]

---

1. Local 854 originally objected to the entry of an order setting a date for a hearing on the proposed settlement. The Court directed that the hearing be held but that the notice to the class contain a statement of the opposing views of Local 854. Before the notice was mailed, however, Local 854 changed its position and elected not to have its earlier views opposing the settlement set forth in the notice.

After another vote of its obviously closely divided membership, Local 854 moved to reintervene several days prior to the January 19th hearing. Although we denied the motion, we granted the Union leave to file a letter with the Court outlining the Union's current position with respect to the proposed settlement. The Union essentially adopted its earlier position opposing approval in a letter received by the Court several days later.

■ The proposed settlement has been drafted after extensive negotiations on the part of all counsel in an effort to accommodate the rights and interests not only of the class members but all other interested and potentially affected parties as well. In considering approval of the proposed stipulation, we note initially that there is a great inclination in favor of settlement in discrimination cases of this type. *See Vulcan Society of Westchester County, Inc. v. Fire Department of White Plains,* 505 F.Supp. 955, 961 (S.D.N.Y.1981) (Sofaer, J.) (citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974)). Matters of alleged discrimination in employment on the basis of race are difficult and delicate, particularly when the litigation affects an organization such as the Fire Department, in which morale, camaraderie and good working relations are so crucial and where life and safety are involved. For these reasons, a negotiated settlement rather than a Court-imposed decree is something that carries with it a strong presumption of legitimacy.

■ The role of the Court in approving this settlement is somewhat limited: we must find that the terms of the settlement are lawful, reasonable and equitable. *Vulcan Society,* 505 F.Supp. at 961; *Alexander v. Bahou,* 86 F.R.D. 194, 198 (N.D.N.Y. 1980). The Court must ensure that the interests of the class members are adequately served, and that the settlement does not unduly burden the rights and interests of other parties likely to be affected by its terms.

■ Upon consideration of the terms of the proposed settlement, the views of the parties, and all other materials submitted to the Court, we find the settlement lawful, reasonable and equitable. The decision of the New York City defendants to augment the results of a possibly unlawful, discriminatory promotional examination through the use of a component that ensures that minority candidates are not discriminated against by its results is eminently reasonable and lawful. The use of minority hiring ratios to ensure compliance with Title VII and the Fourteenth Amendment has been sanctioned in this Circuit where a violation of the Civil Rights laws has been shown. *See, e.g., Guardians Association of the New York City Police Department, Inc. v. Civil Service Commission of New York,* 630 F.2d 79, 106-09 (2d Cir.1980), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981); *Vulcan Society of the New York City Fire Department v. Civil Service Commission of New York,* 490 F.2d 387, 398-99 (2d Cir.1973). Where the possibility is great that a serious racial imbalance exists in the standards for employment promotion, it is certainly appropriate to allow the parties to utilize voluntarily reasonable ratios based on race to correct for an admittedly discriminatory impact in hiring as an interim measure, even in the absence of an express judicial finding of violation of the civil rights laws. *See United Steelworkers v. Weber,* 443 U.S. 193, 208, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 480 (1978); *Vulcan Society,* 505 F.Supp. at 962-63; *Detroit Police Officers' Association v. Young,* 608 F.2d 671, 689-90 (6th Cir.1979). This is especially true in a case such as this, where the promotion examination under attack employs the same methodology as that found to be in violation of Title VII in *Guardians Association of the New York City Police Department v. Civil Service Commission of New York,* 484 F.Supp. 785 (S.D.N.Y.), *aff'd in relevant part,* 630 F.2d 79 (2d Cir.1980), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981), and where the settlement contains a clause that implicitly acknowledges that the plaintiff class has made out its *prima facie* case of disparate

racial impact, the first step in a successful Title VII suit. Stipulation of Settlement and Order, at 3 (45.49% of whites who took examination passed; 23% of blacks passed); *see Guardians Association,* 630 F.2d at 88, and cases cited therein. Indeed, Judge Carter approved an almost identical consent judgment in *Hispanic Society v. Civil Service Commission of New York,* 527 F.Supp. 751, 757–58 (S.D.N.Y.1981).

We find unpersuasive the objections lodged by Local 854. The argument of the Union is, in essence, that if Examination No. 510 is discriminatory enough in its racial impact to justify the use of minority ratios, then all promotional rankings derived from it are legally suspect. As a result, the list should be scrapped as soon as possible and a new examination instituted that would be fair to blacks and whites alike. While appealing on its face, this view is too stark in its interpretation of Title VII law, for it forces defendants either to concede total liability in order to justify the use of hiring ratios, or to risk so-called "reverse discrimination" suits by non-minorities who argue that racially-based hiring ratios are unconstitutional without an explicit finding of past discrimination. This interpretation of our discrimination laws would force an employer to litigate every discrimination claim to a conclusion in order to avoid future legal challenge to its hiring practices. This situation would indeed force the employer to walk a "high tightrope without a net," *Weber v. Kaiser Aluminum & Chemical Corporation,* 563 F.2d 216, 230 (5th Cir.1977) (Wisdom, J., dissenting), *cited with approval, United Steelworkers v. Weber,* 443 U.S. 193, 210, 99 S.Ct. 2721, 2730, 61 L.Ed.2d 480 (1979) (Blackmun, J., concurring).

Where, as here, a voluntarily adopted ratio is supported by the plaintiff class, the New York City defendants, and the party representing those firemen who passed the examination and would be promoted in the absence of a hiring ratio, we think the adoption of this form of relief is lawful and in the best interests of all concerned.

The Union contends nevertheless that the use of Examination No. 510 as a basis for promotion over the next four years violates New York Civil Service Law §§ 56 and 65 (McKinney 1973 & Supp.1981). Civil Service Law § 56 provides that eligibility lists shall have a life of not over four years. Section 65 allows provisional appointments for up to nine months until selection and appointment can be made on the basis of a competitive examination. Provisional appointments have been made during the pendency of this litigation from the list derived from Examination No. 510. The settlement provides that upon approval by the Court, all those permanently appointed to the rank of Captain would receive seniority based on the date of their respective provisional appointments, and the augmented promotion list would remain in effect until the expiration of four years or until the list is exhausted, whichever comes first.

The Union argues that approval of the list for a full four-year life, together with what is, in effect, a retroactive seniority provision based on the date of provisional appointments, effectively prolongs the life of the promotion list to five-and-one-half years in violation of New York Civil Service Law § 56.

We find the proposed settlement well within both the letter and the spirit of the New York Civil Service Laws. Subsection III(A) of the Settlement expressly limits the use of the augmented promotion list to a period of four years after approval by the Court, in keeping with New York Civil Service Law § 56. *Mena v. D'Ambrose,* 44 N.Y.2d 428, 406 N.Y.S.2d 22, 377 N.E.2d 466 (1978). Moreover, the granting of seniority to those appointed under the terms of the settlement is appropriate where the parties have entered into a settlement that acknowledges the high possibility that discriminatory practices were employed in promotion. *Cf. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 399–400, 102 S.Ct. 1127, 1135–36, 71 L.Ed.2d 234 (1982) (District Court may award retroactive seniority to discriminated class members in a Title VII suit over the objection of a union that has not itself been found guilty of discrimination).

The fact that provisional appointments have been made from list No. 510 during the pendency of this litigation accords with the intent of the New York Civil Service Laws. It is true, as the Union points out, that a number of the provisional appointments have extended beyond the statutory nine-month period contained in New York Civil Service Law § 65. But it is also clear that the purpose of the nine-month limitation contained in § 65 is to force the State to hold competitive examinations as quickly as possible to ensure that appointments are made on the basis of merit and fitness as required by Section 6 of Article V of the New York State Constitution. *See Hammon v. Bartlett*, 63 A.D.2d 810, 405 N.Y. S.2d 513, 515 (3d Dept.1978). There is no allegation in this case—nor could there be—that provisional appointments have been made to circumvent the requirements of Article V. Indeed, the focal point of this litigation is to ensure that the mandate of Article V of the New York Constitution is met without discriminating on the basis of race. We see no alternative on the part of the New York City defendants but to employ provisional appointments pending the resolution of this litigation.

Finally, the fact that provisional appointments drawn from the list under attack will receive permanent status and seniority based on the date of their provisional appointment does not mean that the life of the augmented list will, if approved, extend to five-and-one-half years. Even if no provisional appointments had been made since this litigation was initiated, the result upon approval of the settlement and implementation of the augmented list would be exactly the same as that which currently exists: all slots for Captain would be filled with persons from the augmented list; such persons would receive seniority on the basis of the order and date of appointment; and the list would be effective as of thirty days from the date of approval for four years or until the list was exhausted, whichever came first. The only difference between this scenario and the one now facing the Court is that the Fire Department has chosen to appoint persons provisionally from the list under attack rather than leaving the positions vacant or appointing other provisionals who would be terminated upon approval of a permanent list. We find the City's decision to appoint provisionals from the eligibility list and to grant seniority based on the date of such appointments upon approval of this settlement both lawful and reasonable under the circumstances.

While we find the settlement lawful, reasonable and equitable, we nevertheless are aware that it raises problems that reflect the transitional stage in which the Fire Department finds itself. A solution such as the settlement before this Court cannot fully succeed without affecting and, to some degree, frustrating the expectations of people who have no personal responsibility for the wrongs sought to be corrected. Nevertheless, we find that the proposed settlement best serves the interests of the class members while at the same time maintaining in part the expectations of those who took and passed examination No. 510. The expectations of those who did not pass the examination and who are not members of the plaintiff class are not unduly frustrated by the settlement; these candidates may take the next examination that must be promulgated, at the latest, within four years of approval of this settlement. This arrangement fairly and reasonably serves the rights, interests, and expectations of the plaintiff class as well as those who passed the examination in its original form.

For all of the reasons stated above, the proposed stipulation and order of settlement is hereby approved.

SO ORDERED.