**Elaine REID, et al., Plaintiffs,**

v.

**STATE OF NEW YORK, et al., Defendants.**

**No. 83 Civ. 2437 (KTD).**

United States District Court, S.D. New York.

Aug. 9, 1983.

Teitelbaum & Hiller, P.C., New York City, for plaintiffs; William Hibsher, Herbert Teitelbaum, New York City, of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Barbara B. Butler, Asst. Atty. Gen., New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

On March 30, 1983, plaintiffs Elaine Reid, Brenda Ellis, Donna Ernest, Janice Henry, Maurva Moss, and Carmen Ramos brought a class action on behalf of blacks and hispanics against New York State, Governor Mario Cuomo, the New York State Department of Civil Service ("Department") and Joseph Valenti, President of the New York State Department of Civil Service alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981, 1983, and the Thirteenth and Fourteenth Amendments. The alleged violations arise out of the November 6, 1982 Department Examinations Nos. 25–583 and

25–584, for the position of Legal Assistant I and II.

The parties arrived at a proposed settlement of this lawsuit and on May 26, 1983, I granted preliminary approval of the consent decree. I received objections and motions to intervene [1] after the grant of preliminary approval. A hearing was held on July 22, 1983 to provide interested "parties with the opportunity to participate in the hearing through written statements or in person." Proposed Consent Decree at 11.

Settlement of a class action requires court approval pursuant to Fed.R. Civ.P. 23(e). Approval is warranted when a settlement is "fair, reasonable and adequate." *See TBK Partners, Ltd. v. Western Union Corporation,* 675 F.2d 456 (2d Cir. 1982). Courts encourage voluntary compromises of Title VII litigation for a host of reasons including judicial economy and cooperative, efficient resolution of discriminatory complaints. *See Kirkland v. New York State Department of Correctional Services,* 711 F.2d 1117 at 1128 (2d Cir.1983) ("Kirkland"). This encouragement is judicially reinforced by the presumption of validity accorded Title VII settlements, *See Vulcan Society of New York City Fire Department, Inc. v. City of New York,* 96 F.R.D. 626, 629 (S.D.N.Y.1983), which is rebutted only when the settlement terms are "unreasonable, unlawful, or against public policy." *Berkman v. City of New York,* 705 F.2d 584 at 597 (2d Cir.1983). It is against this legal background that the instant decree is evaluated.

The consent decree breaks down by race the results of Civil Service Examinations Nos. 25–583 and 25–584:

Examination 25–583

| | Total | White | Minority |
|---|---|---|---|
| # Candidates | 434 | 340 | 94 |
| # Passed | 206 | 191 | 15 |
| # Failed | 228 | 149 | 79 |

1. The Civil Service Employees Association and Karen L. Hazzard move to intervene. These motions are granted solely for the purpose of objecting to the proposed consent decree. *Kirkland v. New York State Department of*

*Correctional Services,* 711 F.2d 1117 at 1128 (2d Cir.1983) ("Judge Griesa granted intervenors the intervention rights to which their interest entitled them when he permitted them to intervene solely to object to the settlement.").

| | Total | White | Minority |
|---|---|---|---|
| Examination 25–584 | | | |
| # Candidates | 422 | 325 | 97 |
| # Passed | 162 | 146 | 16 |
| # Failed | 260 | 179 | 81 |

Consent Decree at ¶ 7. The parties agree that these figures constitute an adverse impact on minorities. *Id.* *See* 29 C.F.R. § 1607.4 (1982). To correct this, the consent decree provides, in relevant part, that the defendants shall not unlawfully discriminate against an employee or applicant for employment as Legal Assistant I or II. To effect this mandate the Department agrees to administer a new "selection procedure" for these positions, which may or may not include a written examination, within twenty-four months of the date of the consent decree. The selection procedure "shall be designed to produce a valid, job related examination, facilitating the appointment of qualified Legal Assistants while not having adverse impact, and in accordance with applicable professional standards as defined by controlling federal laws." Consent Decree at ¶ 21. Although the particulars of the new procedure have not yet been devised, and accordingly are not included in the decree, the decree does set forth guidelines for the minimization of subsequent adverse impact. Until the new eligibility list based on the new selection procedure is certified, the decree prohibits the defendants from terminating provisional Legal Assistants I and II except for cause, economic or business necessity or from certifying any appointments from the new list.

Notice of this proposed decree was sent to all persons who sat for Examination Nos. 25–583 and 25–584. Fourteen persons objected to the terms of the decree.[2] The majority of the objectors argue that I cannot approve the settlement until the test is deemed discriminatory and not job-related. The objectors also contend that the decree discriminates against those who passed the exam. It is further suggested that the defendants should not be allowed twenty-four months to administer a new selection procedure because it is an unreasonably long period of time. All of these objections are addressed below.[3]

## DISCUSSION

The objectors propose that acceptance of the decree is premature absent a finding of discrimination. I disagree. "In class actions, the principal requirement for such a settlement is that there be a reasonable basis for the compromise, i.e., some showing of probability of success on the merits." *Kirkland,* at 1130. The two relevant factors to consider in evaluating the probability of success on the merits are "(1) whether there is an existing condition which can serve as a proper basis for the creation of race-conscious remedies; and (2) whether the specific remedies of the compromise agreement are neither unreasonable nor unlawful." *Id.,* at 1129.

Plaintiffs present an existing condition necessitating correction. A demonstration of adverse impact establishes a *prima facie* case of Title VII discrimination. *Guardians Association of New York City Police Department, Inc. v. Civil Service Commission,* 630 F.2d 79, 88 (2d Cir.1980), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). Violation of the "four-fifths rule" is evidence of adverse impact.[4]

**2.** The objectors are Karen L. Hazzard, Cynthia Pullman, Walter Witkowski, Nancy Hoople, Steven R. Tarasuk, Valerie Conforti Kerker, Douglas M. Williams, Joseph Racanelli, Joyce Ellowitz, Anthony Crocitto, Vernell D. Siegel, John D. Grzedzicki, Marian O'Connor and David Moore. The Civil Service Employees Association, Inc. joins Cynthia Pullman in her objection.

**3.** Those who passed the examination object to forfeiting the $5 fee they paid to take the examination. The defendants agree to waive the $5 fee for those who retake the examination, mooting this objection.

**4.** D. Adverse impact and the "four-fifths rule." A selection rate for any race, sex, or ethnic group which is less than four-fifths (⁴⁄₅) (or eighty percent) of the rate for the group with the highest rate will generally be

The results of Examinations Nos. 25–583 and 25–584 violate the "four-fifths rule." The minority pass rate for the examinations in issue was far less than eighty percent of the white pass rate. Fifty-six percent of the white persons who took Examination No. 25–583 passed, while only sixteen percent of the minorities who took the same exam passed. The minority pass rate is thus 20.7 percent of the white pass rate, in obvious violation of the "four-fifths rule." Similarly, forty-five percent of the white persons who took Examination No. 25–584 passed, while only sixteen percent of the minorities who took this exam passed. The minority pass rate is thus 35.5 percent of the white pass rate, also in clear violation of the "four-fifths rule." This statistical data demonstrating "adverse impact creates a 'presumption of Title VII discrimination,' *Guardians Association of New York City Police Department, Inc. v. Civil Service Commission,* 630 F.2d 79, 88 (2d Cir.1980), *cert. denied,* 452 U.S. 940 [101 S.Ct. 3083, 69 L.Ed.2d 954] (1981), which, if unrebutted by any showing that the contested practice was job-related, requires the court to enter a decree finding unlawful discrimination." *Kirkland,* at 1130. Defendants have not suggested that the examinations were job-related. Accordingly, there is certainly a "proper basis for the creation of race-conscious remedies."

 There is no requirement that the plaintiffs prove that the tests were discriminatory or non job-related before judicial approval of a settlement is warranted. For example, in *Kirkland,* appellant New York State Department of Correctional Services unsuccessfully challenged the district court's approval of a Title VII class action settlement. The settlement agreed to eradicate the discriminatory adverse impact resulting to minorities from the Civil Service Commission examinations given to correctional officers seeking promotion. It further agreed to institute new selection proce-

dures to insure non-discriminatory promotion of correctional officers. The *Kirkland* Court found that the statistical evidence documenting the disproportionate racial impact combined with the defendants' willingness to enter "into a compromise without rebutting an established *prima facie* case amounts to an admission of unlawful discrimination for purposes of Title VII." *Kirkland,* at 1131.

In line with the two part *Kirkland* analysis enunciated above, I turn next to the reasonableness of the consent decree. In order to satisfy the standard of reasonableness applicable to Title VII settlements, the proposed remedies "must be substantially related to the objective of eliminating the alleged instance of discrimination ... and must not unnecessarily trammel the interests of affected third parties." *Kirkland,* at 1132. The consent decree herein substantially satisfies its objective. New selection procedures designed to combat the disproportionate adverse impact of Examination Nos. 25–583 and 25–584 are proposed. These procedures need not follow the traditional testing methods but may utilize flexible techniques designed both "to produce a valid, job-related examination, facilitating the appointment of qualified Legal Assistants while not having adverse impact, and in accordance with applicable professional standards as defined by controlling federal laws." Consent Decree at ¶ 21. To achieve this desirous result, the decree offers the defendants three alternative techniques:

(i) Separate frequency distribution for minority and non-minority candidates;

(ii) Establishing score zones in which one or more final examination scores shall be deemed the same for the purpose of certification and appointment;

(iii) Elimination of particular items that result in statistically significant adverse racial impact among candidates of substantially equivalent ability.

\* \* \* \* \* \*

29 C.F.R. § 1607.4(D) (1982).

regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact.

Consent Decree at ¶ 21(c). After a new selection procedure is adopted, the self-identified minorities who sat for Examination Nos. 25–583 and 25–584 shall be notified by the Department of the upcoming examination. The results of the new procedure will be compared to the "⅘ rule" delineated in the Uniform Guidelines on Employee Selection Procedures to determine if the new selection procedure has an adverse impact on minorities.

I find two components of this consent decree troublesome, however. First, the defendants are accorded twenty-four months to administer a new selection procedure. Second, the defendants are only obligated to send an examination announcement to the self-identified minorities who took Examination Nos. 25–583 and 25–584. Although the consent of non-minorities is not a pre-condition for settlement of Title VII lawsuit, *Kirkland,* at 1126, the reasonableness of the consent decree requires an evaluation of its effect on both minorities and non-minorities.

The twenty-four month deadline imposed on the defendants is unduly long. At the July 22nd hearing, the defendants objected to the imposition of a shorter time deadline arguing that "remedial examinations ... can take a good deal of time to prepare to make sure that there won't be additional litigation concerning the examination process." Hearing Transcript at 8. Considering the present dearth of available jobs, it is unreasonable to ask the minorities and non-minorities alike who passed the examinations to wait possibly two years before a new selection procedure is administered. Furthermore, the minorities who did not pass the examinations also should be allowed to retake a non-discriminatory examination in less than two years. Thus, even though the defendants object, the consent decree as it stands is unreasonable and will not be approved unless the defendants agree to a reasonable six month time limitation.

I also find that the consent decree as written is unreasonable because it does not incorporate a provision for announcement of a new examination to all parties who sat for Examination Nos. 25–583 and 25–584. All persons should be notified of their right to undergo the new selection procedure. Inclusion of this provision will not unduly burden the defendants.

The parties are commended on their attempt to resolve amicably this lawsuit. Unfortunately, for the reasons stated above, the consent decree as it stands does not merit approval. The two year period allotted to the defendants to correct the examinations in question and the inadequate notice provisions unreasonably impose on the rights of the plaintiffs and the interested third parties. If these two unacceptable components are corrected, then the consent decree will be approved.